[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, Slip Opinion No. 2022-Ohio-1559.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-1559

THE STATE EX REL. MANGO, APPELLANT, *v.* OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, Slip Opinion No. 2022-Ohio-1559.]

*Mandamus—Parole—Inmate failed to establish violation of due-process rights during parole-revocation hearing—Inmate received effective assistance of counsel at parole-revocation hearing—Hearing officer's finding that inmate violated terms of parole supported by sufficient evidence—Court of appeals' judgment denying request for writ affirmed.*

(No. 2021-0646—Submitted January 25, 2022—Decided May 11, 2022.)

APPEAL from the Court of Appeals for Franklin County, No. 18AP-945, 2021-Ohio-1314.

_____

**Per Curiam.**

{¶ 1} Appellant, Raymond Mango, was ordered back to prison for violating the conditions of his parole. He sought a writ of mandamus in the Tenth District Court of Appeals to order appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), to either reinstate his parole or grant him a new parole-revocation hearing. The Tenth District denied the writ; we affirm.

## I. Factual and Procedural Background

{¶ 2} Mango was convicted of aggravated murder and aggravated robbery in 1981 and sentenced to 20 years to life in prison. He was released on parole in 2016. Mango's conditions of parole included (1) obeying federal, state, and local laws and ordinances, (2) following all orders given by his supervising parole officer, and (3) obtaining approval from the parole board before changing his residence. In December 2016, Mango's parole officer told him to have no contact with a girlfriend, Gwendolyn Jarrett, after Mango and Jarrett reported having had either physical or verbal altercations with each other.

{¶ 3} On March 28, 2018, police in Cleveland responded to a call from Mango, who sought assistance in retrieving property from Jarrett's residence. At the scene, Mango informed the responding officers that he and Jarrett had been in an altercation earlier in the day and that he wanted to get his clothes from the residence and leave. Jarrett told officers that Mango had hit her. Jarrett had a minor injury on her lip and indicated to an officer that Mango also hit her on the side of her face.

{¶ 4} Mango initially denied touching Jarrett but ultimately admitted to the officers that he had pushed her during an argument. When officers handcuffed Mango to take him into custody, Jarrett recanted and told them that she did not want Mango to go back to jail and that she had injured herself falling down the stairs. Officers asked Jarrett again whether Mango had hit her and she responded, "[N]ot

as hard as he could have." Mango was arrested for domestic violence against Jarrett, but no criminal charges were filed against him for the incident.

{¶ 5} The Ohio Adult Parole Authority ("APA") charged Mango with violating the terms of his parole by (1) causing or attempting to cause physical harm to Jarrett, (2) failing to comply with his supervising officer's order not to contact Jarrett, and (3) failing to obtain parole-board approval before changing his address. In the written hearing notification, Mango was advised of his right to request counsel from the Office of the Ohio Public Defender and to request the presence of witnesses to testify on his behalf. Mango requested counsel to represent him but did not request to call witnesses.

{¶ 6} An APA hearing officer held a revocation hearing on May 2, 2018, at which Mango was represented by counsel. Despite the APA's issuance of a subpoena to her, Jarrett did not appear at the hearing to testify. One of the officers who arrested Mango testified, and police body-camera video from the incident was introduced into evidence. The hearing officer found Mango guilty of causing or attempting to cause physical harm to Jarrett and failing to comply with the condition that he obtain parole-board approval before changing his address but not guilty of failing to comply with a supervising officer's order. Mango's parole was revoked, and the hearing officer recommended that he be ordered to serve an additional 36 months in prison before again becoming eligible for parole. The parole board approved the hearing officer's recommendation.

{¶ 7} On December 10, 2018, Mango filed an action for a writ of mandamus in the Tenth District Court of Appeals. Mango alleged that he was deprived of the effective assistance of counsel at his revocation hearing, that he was not permitted to cross-examine witnesses against him, and that he was found guilty based solely on hearsay evidence. Mango asked for an order reinstating his parole or granting him a new revocation hearing. ODRC filed a motion to dismiss the action for failure to state a claim for relief. The court of appeals referred the action to a

magistrate, who recommended granting ODRC's motion to dismiss, *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 18AP-945, 2019-Ohio-4774, ¶ 37.

{¶ 8} Mango filed objections to the magistrate's recommendation. The court of appeals sustained Mango's objections, finding that the magistrate impermissibly weighed the evidence in considering ODRC's motion to dismiss under Civ.R. 12(B)(6). *Id*. at ¶ 8-11.

{¶ 9} On remand, the court of appeals referred the matter to a different magistrate, to whom the parties submitted evidence and briefs on the merits. The magistrate issued a decision that included findings of fact and conclusions of law. To the extent that Mango sought release from prison through reinstatement of his parole, the magistrate determined that "[h]abeas corpus, not mandamus, is the only remedy for a claim of entitlement to immediate release." 2021-Ohio-1314, ¶ 35. And as for the mandamus claim seeking a new parole-revocation hearing, the magistrate rejected all of Mango's arguments and recommended that the court of appeals deny the writ of mandamus. *Id.* at ¶ 38-44.

{¶ 10} Mango again objected to the magistrate's recommendation. This time, the court of appeals overruled Mango's objections, adopted the magistrate's decision as its own, and denied the writ. *Id*. at ¶ 12. Mango appealed to this court as of right.

## II. Analysis

{¶ 11} To obtain a writ of mandamus, Mango "must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of [ODRC] to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Marsh v. Tibbals*, 149 Ohio St.3d 656, 2017-Ohio-829, 77 N.E.3d 909, ¶ 24. In this appeal, Mango argues that his due-process rights were violated at his parole-revocation hearing. If Mango can prove that a due-process violation occurred, mandamus is the appropriate remedy for compelling the parole

authority to conduct a second hearing.[1]  *See State ex rel. Ellison v. Black*, 165 Ohio St.3d 310, 2021-Ohio-3154, 178 N.E.3d 508, ¶ 12.  This court reviews the court of appeals' judgment de novo.  *See State ex rel. Haynie v. Rudduck*, 160 Ohio St.3d 99, 2020-Ohio-2912, 153 N.E.3d 91, ¶ 10 (court of appeals' judgment in a mandamus action is reviewed as if originally filed in this court).

### A.  *Right of Confrontation and Right to Call Witnesses*

{¶ 12} In his first proposition of law, Mango argues that the ODRC violated his "minimum constitutional due process rights" at the parole-revocation hearing.  The revocation of parole implicates a liberty interest that cannot be denied without certain procedural protections.  *Morrissey v. Brewer*, 408 U.S. 471, 481-484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  Minimum due-process protections at a parole-revocation hearing include the "opportunity to be heard in person," the right to "present witnesses and documentary evidence," and "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."  *See id.* at 489.

{¶ 13} Mango first complains that his due-process rights were violated by the admission of what he alleges was impermissible hearsay evidence, namely "the responding officer's assumptions based on his observations of * * * Jarrett" and the officer's conversations with her.  This evidence is especially problematic, Mango argues, given that Jarrett, the alleged hearsay declarant, recanted her statement to the officer at the scene and expressed her desire not to have Mango arrested.  Mango argues that the use of these statements violated his right to confront witnesses against him.

---

1. Mango's complaint also sought a writ of mandamus to compel the reinstatement of his parole. As noted above, the court of appeals denied the writ as to this relief because habeas corpus, not mandamus, is the proper remedy for obtaining release from confinement.  2021-Ohio-1314 at ¶ 6, 35.  Mango does not appeal this aspect of the court of appeals' ruling, noting that he is seeking only a new parole-revocation hearing in this action.

**{¶ 14}** Mango's argument is without merit. Though a parolee has certain due-process rights at a revocation hearing, he is not entitled to all the procedural rights accorded the defendant in a criminal trial. *See Morrissey* at 480 ("the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"); *see also State ex rel. Coulverson v. Ohio Adult Parole Auth*., 62 Ohio St.3d 12, 16, 577 N.E.2d 352 (1991). As relevant here, the parole board may admit hearsay evidence because "a parolee contesting revocation does not have the same confrontation rights as does a trial defendant." *Coulverson* at 16. Accordingly, the arresting officer's testimony at the revocation hearing, even if it contained hearsay statements of Jarrett, did not violate Mango's due-process rights. Moreover, the record shows that the hearing officer relied on more than the so-called hearsay evidence of which Mango complains. Most notably, the evidence against Mango included body-camera footage from the arresting officer, which contained the officer's observations from the scene and admissions by Mango that he had pushed Jarrett during an argument.

**{¶ 15}** Mango also contends that he was deprived of his right to have his sister, Vernell Reid, testify on his behalf. In the proceedings below, Mango submitted an affidavit from Reid stating that Mango resided in her home from the time he was released from prison in 2016 until he was arrested in 2018. Mango argues that he should have been able to call Reid as a witness to refute the charge that he was living with Jarrett without APA permission. But Mango does not show a due-process violation here either. The record shows that Mango did not request to call Reid to testify at his revocation hearing. The only witness Mango's counsel called on his behalf was Mango's parole officer.

**{¶ 16}** For these reasons, Mango's first proposition of law is without merit.

*B. Sufficiency of Evidence and Effective Assistance of Counsel*

{¶ 17} In his second proposition of law, Mango argues that there was insufficient evidence to support a finding that he violated his parole. Also under this proposition, he argues that he was denied the effective assistance of counsel at his hearing.

{¶ 18} While the United States Supreme Court has not held specifically that due process requires sufficient evidence to support the revocation of parole, probation, or other types of postrelease supervision, it has suggested as much. *See Black v. Romano*, 471 U.S. 606, 615-616, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985) (finding that the state trial court's decision to revoke an offender's probation satisfied due process, agreeing that "there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation"). There is sufficient evidence to sustain a revocation of parole when there is "substantial evidence" to support the decision. *State v. Delaney*, 11 Ohio St.3d 231, 236, 465 N.E.2d 72 (1984). There is "substantial evidence" to support a finding of a parole violation when the evidence presented by the APA, if believed, is sufficient to satisfy the burden of proof. *See Consol. Edison Co. of New York v. Natl. Labor Relations Bd.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed.2d 126 (1938) ("Substantial evidence * * * means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *see also Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992) (" 'Substantial' evidence is evidence with some weight; it must have importance and value").

{¶ 19} The purpose of a parole-revocation hearing "is to determine whether there is a preponderance of the evidence, taking the record as a whole, that the releasee violated a condition of release or post-release control sanction." Ohio Adm.Code 5120:1-1-18(A)(3). Here, there is substantial evidence in the record to support the hearing officer's conclusion that the APA met its burden of proving that Mango violated the terms of his parole. As noted above, the hearing officer relied

on body-camera footage from one of the arresting officers, who also testified at the revocation hearing. In the footage, Jarrett told the officer that she did not want Mango in her house because of "the way he beat on me." Jarrett had visible wounds to her face and stated that Mango had struck her face multiple times. The officer repeatedly asked Jarrett whether Mango hit her, and she repeatedly said yes. Jarrett also told the officer that Mango had been living with her since August 2017. Finally, the footage also shows admissions by Mango that he had pushed Jarrett during a verbal altercation.

{¶ 20} Mango does not dispute the contents of the body-camera video evidence. Rather, he argues that this evidence does not prove that he hit Jarrett or that he was living with her. He emphasizes that Jarrett has recanted her claim that he hit her and that there was no corroborating evidence to show that he was living with Jarrett. But these arguments are focused on the hearing officer's weighing of the evidence and do not undermine the substantial evidence in the record that supports the hearing officer's determination. In any event, the hearing officer had a reasonable basis to believe that Mango did, in fact, strike Jarrett. In context, Jarrett's recantation to the officer was not a denial that the incident happened, but rather, an attempt to prevent Mango from going to jail. When the officer informed Jarrett that he was going to arrest Mango "unless you're telling me you're lying," Jarrett responded, "I'm lying, I'm lying, I fell down the stairs. Just let him go." The hearing officer reasonably rejected this recantation when juxtaposed with Jarrett's visible wounds and her acknowledgment that Mango hit her with a closed fist.

{¶ 21} Mango also argues that his counsel at the revocation hearing was ineffective. Counsel is not automatically required for a parole-revocation hearing. *See Marsh*, 149 Ohio St.3d 656, 2017-Ohio-829, 77 N.E.3d 909, at ¶ 27; *see also* Ohio Adm.Code 5120:1-1-18(A)(5)(e) (specifying a right to counsel "if the parole board member or hearing officer finds that the charges and/or the evidence to be

presented are complex or otherwise difficult for the releasee to present"). Because there is no automatic Sixth Amendment right to counsel at parole-revocation hearings, it is not clear whether a parolee has a right to the effective assistance of counsel at a revocation hearing. *See United States v. Lofton*, 810 Fed.Appx. 436, 442 (6th Cir.2020). But even if Mango had a right to the effective assistance of counsel at his revocation hearing, he has not established that his counsel was deficient.

**{¶ 22}** To establish ineffective assistance of counsel, Mango must show (1) that his counsel was deficient and (2) that his counsel's deficient performance prejudiced him. *State v. Phillips*, 74 Ohio St.3d 72, 84, 656 N.E.2d 643 (1995), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient when it falls below an objective standard of reasonable representation. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 133.

**{¶ 23}** Mango contends that his counsel's performance was deficient for failing to seek a continuance to assure that Jarrett and Reid could testify on his behalf. (Jarrett was subpoenaed but did not appear for the hearing.) Mango also notes that Jarrett submitted a written statement after his revocation hearing, again proclaiming Mango's innocence and contending that she was never contacted about testifying. And a post-hearing affidavit from Reid asserts that Mango lived with her from the time of his release from prison in 2016 until his March 28, 2018 arrest.

**{¶ 24}** Though Mango's counsel did not request a continuance when Jarrett did not appear, he argued that the hearing officer should consider her failure to appear when assessing the credibility of her allegations against Mango. Thus, counsel's strategy was to attack the credibility of Jarrett's statements to the police rather than request a continuance to obtain her testimony. Counsel's strategic decision in this regard does not form the basis for an ineffective-assistance claim. *See Phillips* at 85 ("Debatable trial tactics generally do not constitute a deprivation

of effective counsel"). For the same reasons, it cannot be said that Mango's counsel was deficient for failing to call Reid as a witness. "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). At best, Mango has shown only that his trial counsel made debatable strategic choices.

**{¶ 25}** For these reasons, Mango's second proposition of law is without merit.

### III. Conclusion

**{¶ 26}** Mango has not shown that the parole-revocation proceedings violated his constitutional right to due process. Accordingly, the court of appeals correctly denied the writ of mandamus.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

BRUNNER, J., not participating.

_____

G. Michael Goins, for appellant.

Dave Yost, Attorney General, and Mark W. Altier, Assistant Attorney General, for appellee.

_____

10