[Cite as *State ex rel. Johnson v. Adult Parole Auth.*, 2023-Ohio-578.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Gregory Johnson, | : | |
| Relator, | : | No. 21AP-147 |
| v. | : | (REGULAR CALENDAR) |
| Ohio Adult Parole Authority [Revocation Hearing Committee], | : | |
| Respondent. | : | |
| | : | |

D E C I S I O N

Rendered on February 28, 2023

**On brief:** *Gregory Johnson*, pro se.

**On brief:** *Dave Yost*, Attorney General, *George Horvath*, and *Tony H. Shang*, for respondent.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

JAMISON, J.

{¶ 1} Relator, Gregory Johnson, an inmate at London Correctional Institution, commenced this original action requesting this court issue a writ of mandamus ordering respondent, Ohio Adult Parole Authority Revocation Hearing Committee ("OAPA"), to reinstate his parole or grant him a new parole hearing. Johnson has raised two claims for relief. First, Johnson asserted that OAPA did not provide him with notice of the alleged parole violation against him in violation of his due process rights. Second, Johnson claimed a due process violation when he was denied the right to present a defense in the revocation hearing.

{¶ 2}  This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  On June 6, 2022, the magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny Johnson's petition for a writ of mandamus, concluding he cannot show a clear legal right to a new parole revocation hearing.

{¶ 3}  Johnson filed an objection to the magistrate's decision.  Therefore, we must independently review the decision to determine whether "the magistrate has properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  We "may adopt or reject a magistrate's decision in whole or in part, with or without modification."  Civ.R. 53(D)(4)(b).

{¶ 4}  Johnson first claims that his due process rights were violated because he was not provided proper notice of the alleged violations against him.  On May 14, 2019, Johnson received a notification of release violation hearing ("notification"), which he acknowledged by his signature and admitted to one violation.  The notification clearly stated Johnson is alleged to have violated rule number 2, by not obtaining permission to change his residence.  The notification also informed Johnson of his rights, including the right to counsel, to request witnesses, and to review the evidence presented against him.

{¶ 5}  Johnson contends there is no proof that he changed his residence, so he could not have violated the rule.  Johnson argued his prior parole officer had permitted him to spend nights away from his residence from time to time, but offered no evidence corroborating the permission.  The record, plus Johnson's admission to the violation, shows that Johnson was afforded due process.

{¶ 6}  Johnson next claims a due process violation when his court-appointed counsel coerced him into admitting the violations and prevented him from presenting a defense.  There is no indication in the record that Johnson raised an issue of ineffective assistance or coercion at the hearing or any other time.  Johnson emphasizes the victim's inconsistent statements to law enforcement and the lack of any witnesses to the altercation, but the hearing officer found the evidence supported the charges.  Johnson also contends that because the charges against him were dismissed, he cannot be found guilty of any corresponding parole violations.

{¶ 7} Johnson asserts that OAPA violated his "minimum constitutional due process rights" regarding his revocation hearing. *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, __ Ohio St.3d __, 2022-Ohio-1559, ¶ 12, citing *Morrissey v. Brewer*, 408 U.S. 471, 481-84 (1972). While Johnson has certain due process rights at a parole revocation hearing, "he is not entitled to all the procedural rights accorded the defendant in a criminal trial." *Id. at* ¶ 14.

{¶ 8} "[T]he degree of proof required to justify a parole revocation must be of a 'substantial nature,' which is less than the 'beyond a reasonable doubt' degree of proof required in a criminal prosecution." *Helton v. Ohio Adult Parole Auth.*, 10th Dist. No. 00AP-1108 (June 26, 2001), quoting *State v. Mingua*, 42 Ohio App.2d 35, 40 (10th Dist.1974). Johnson has provided no evidence that he was not properly found to have violated parole by changing his address without permission and engaging in assaultive behavior.

{¶ 9} Johnson's entire argument fails because he admitted to both rule violations at the hearing and stated that he regularly spent the night at locations other than his declared residence. "Minimum due process requirements are satisfied in cases where the parolee admits the charged parole violation at the revocation hearing." *Id. See State ex rel. Nedea v. Capots*, 40 Ohio St.3d 74 (1988) (admission of parole violation is sufficient grounds for revocation of parole). Therefore, Johnson's own admissions serve as substantial proof that he violated parole.

{¶ 10} Upon review of the magistrate's decision, an independent review of the record and due consideration of Johnson's objection, we find the magistrate did not err in determining the pertinent findings of fact and conclusions of law. We overrule Johnson's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of facts and conclusions of law contained therein.

{¶ 11} Johnson's request for a writ of mandamus is denied.

*Objection overruled;*
*writ of mandamus denied.*
.

BEATTY BLUNT, P.J., and DORRIAN, J., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Gregory Johnson,                :

        Relator,                                      :

v.                                                           :                          No.  21AP-147

Ohio Adult Parole Authority                 :                      (REGULAR CALENDAR)
[Revocation Hearing Committee],
                                                             :
        Respondent.
                                                             :

---

## M A G I S T R A T E ' S   D E C I S I O N

Rendered on June 6, 2022

---

*Gregory Johnson,* pro se.

*Dave Yost,* Attorney General, *George Horvath,* and *Tony H. Shang,* for respondent.

---

IN MANDAMUS

{¶ 12} Relator, Gregory Johnson, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Ohio Adult Parole Authority Revocation Hearing Committee ("OAPA"), to reinstate his parole or grant him a new parole hearing with counsel and a witness present with all statements and evidence that were withheld from relator and the parole board.

Findings of Fact:

{¶ 13} 1. Relator is an inmate incarcerated at London Correctional Institution ("LCI").

{¶ 14} 2. The OAPA is a subdivision of the Ohio Department of Rehabilitation and Correction ("ODRC").

{¶ 15} 3. In 1993, relator was found guilty of murder and sentenced to a prison term of 15 years to life. On February 10, 2017, he was released on parole. The conditions of parole, among other things, prohibited relator from changing addresses without prior approval and required him to obey all laws and ordinances.

{¶ 16} 4. Relator's most recent report of change of address completed on February 27, 2019, indicated that he would be living with his sister at 4360 Williamson Drive, Dayton, Ohio. Relator claimed his former supervising officer knew that there was a problem with the furnace at his sister's house, and he was permitted to stay elsewhere occasionally. His new supervising officer was Collin Buettner.

{¶ 17} 5. On May 2, 2019, relator's girlfriend, Natasha Hooten, contacted police and reported that relator, her boyfriend for about one year, struck her while they were at a women's shelter. The May 3, 2009, Dayton Police Department investigatory report indicated that when police arrived, Hooten approached them sobbing and told them relator had struck her. Police saw no visible injuries. Hooten told police the two began arguing at the shelter about Hooten's male friend, Paul Hull, and relator struck her twice in the face with an open palm, grabbed her by the hair, and slammed her head into the doorway. The assault ended when a security guard named "Bob" split the two apart. The officer indicated that Hooten changed her version of the events several times, but she blamed it on the fact that Hull was nearby and she did not want Hull to know relator was her boyfriend. A supervisor at the shelter said she did not witness the assault, but she saw Hooten exiting a hallway door while rubbing her face and saying relator had hit her. The shelter security guard "Bob" also indicated he did not witness the assault.

{¶ 18} 6. Relator was arrested for assault and taken to jail. Before business hours on May 3, 2019, relator posted bond and was released. Relator contends that his wife, Tina Johnson, from whom he was separated, drove him from jail to her house at 4301 Riverside Drive, Dayton, Ohio, and dropped him off so he could sleep. At approximately 1:00 p.m.

that day, Buettner came to Johnson's house and took relator into custody, based upon his failure to report a change of address and his assault of Hooten.

{¶ 19} 7. The same day, May 3, 2019, the assault charges were dismissed in Montgomery County Dayton Municipal Court.

{¶ 20} 8. In a May 7, 2019, ODRC voluntary statement, Hooten stated that she and relator got into an argument while at the women's shelter after Hull telephoned her. She stated that relator pushed her, spit on her, smacked her in the head twice, choked her, and slammed her head against a door three times.

{¶ 21} 9. Relator remained incarcerated, and he received a notification of release violation hearing ("notification") on May 14, 2019, which explained his rights with regard to the hearing, including his right to testify, present evidence, subpoena witnesses, cross-examine witnesses, seek disclosure of evidence against him, request representation, and receive a written statement of evidence against him. The notification alleged two rule violations: (1) failure to follow all orders given by the supervising officer, including obtaining permission from the supervising officer before changing his residence; to wit, since on or about May 3, 2019, relator failed to notify his supervising officer of a change in residency; and (2) failure to obey all federal, state, and local laws and ordinances; to wit, on or about May 2, 2019, in the vicinity of Dayton, Ohio, relator caused or attempted to cause physical harm to Hooten.

{¶ 22} 10. Buettner's May 23, 2019, violation hearing report indicated that relator reported an address change to his supervising officer to live with his sister, but he was arrested on May 3, 2019, at the address of Johnson; relator admitted that he had been staying at a women's shelter with his girlfriend Hooten, at various other places for a while, and at a homeless shelter in Springfield, Ohio; and it was evident that relator had not been staying with his sister but most nights at the shelter with Hooten. Buettner also summarized the May 3, 2009, Dayton Police Department investigatory report.

{¶ 23} 11. The parole revocation hearing was held on June 10, 2019, and relator was represented by appointed counsel from the Ohio Public Defender's Office ("public defender"). The hearing officer completed a hearing summary report and notice of findings of release violation hearing on the same date. At the hearing, relator admitted, with mitigation, to the violation of parole terms. The hearing officer found the OAPA provided

sufficient corroboration of the violations via the violation report, relator's admissions, documentary evidence, and the record as a whole and found relator guilty of failing to notify his supervising officer of a change in residence and causing or attempting to cause physical harm to Hooten. The hearing officer revoked relator's parole status based upon relator's blatant disregard to comply with his conditions of parole supervision and repeated pattern of violation behaviors, including assaultive misconduct resulting in bodily injury. The hearing officer ordered that relator be incarcerated for 60 months, until his next release consideration hearing in May 2024.

{¶ 24} 12. On April 9, 2021, relator filed a complaint for writ of mandamus, in which relator requested that this court issue a writ of mandamus ordering OAPA to reinstate his parole or grant him a new parole hearing with counsel and a witness present and with all statements and evidence that were withheld from relator and the parole board. Relator contends that his due process rights were violated when he failed to receive proper notice of his parole violation, and the public defender's office denied his right to present a defense.

Conclusions of Law:

{¶ 25} The magistrate recommends that this court deny relator's writ of mandamus.

{¶ 26} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

> In parole revocation proceedings, due process requires:
>
> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers ; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrissey v. Brewer*, 408 U.S. 471, 480 (1972).

**{¶ 27}** Minimum due process requirements are satisfied in cases where the parolee admits the charged parole violation at the revocation hearing. *Helton v. Ohio Adult Parole Auth.*, 10th Dist. No. 00AP-1108 (June 26, 2001). If it is determined that a petitioner "admitted parole violations to the Parole Board * * * and if those violations are found to be reasonable grounds for revoking parole under state standards, that would end the matter." *Morrissey* at 490. Thus, *Morrissey* does not require the state to present evidence in situations where the parolee admits the violation, and admission of parole violation constitutes sufficient grounds for revocation of parole. *Helton*, citing *State v. Gloeckner*, 4th Dist. No. 520 (Mar. 21, 1994), and *State ex rel. Nedea v. Capots*, 40 Ohio St.3d 74 (1988). Accordingly, once a revocation hearing satisfies minimum due process requirements, unless a parolee is denied parole for a constitutionally impermissible reason, " 'the decision to deny parole is not subject to judicial review.' " *Id.,* quoting *Mayrides v. Ohio State Adult Parole Authority*, 10th Dist. No. 97APE08-1035 (Apr. 30, 1998).

**{¶ 28}** Ohio Adm.Code 5120:1-1-17(F)(1) provides, in pertinent part:

> (F) In determining whether paragraph (B)(1) of rule 5120:1-1-12 of the Administrative Code has been violated, the fact that there has been no criminal conviction or prosecution shall not prevent the adult parole authority from responding to the violation behavior. Such response may include, but is not limited to, the commencement of revocation proceedings pursuant to rules 5120:1-1-18 and 5120:1-1-19 of the Administrative Code. Both of the following apply with regard to revocation:

> (1) A judicial determination that the violation of law or ordinance has not been proven beyond a reasonable doubt or a dismissal of the criminal charges by the prosecutor shall not, for purposes of revocation of release, preclude the parole board from finding a violation of law or ordinance. For purposes of revocation of release, the commission of a violation of release may, under paragraph (A)(3) of rule 5120:1-1-18 of the Administrative Code, be established on the basis of the preponderance of the evidence, taking the record as a whole.

**{¶ 29}** In the present case, relator presents the following two arguments: (1) he was denied his Fourteenth Amendment right to due process when he was not provided proper notice of alleged parole violations he would be required to defend; specifically, the allegation that he failed to report his change of residency; (2) he was denied his Fifth and

Fourteenth Amendment rights, when he was denied his right to present a defense by the public defender; specifically, regarding the allegation that he violated the law by assaulting Hooten.

{¶ 30} With regard to his first argument, relator contends that he was not given proper notice of the violations he would have to answer to at the revocation hearing. Specifically, he claims that there was no evidence that he changed his residence without permission. He argues that his wife, Johnson, took him to her house after posting bail early in the morning so he could sleep, and staying a single night somewhere does not constitute a change of residence. Relator further asserts that his prior supervising officer knew that his sister's house had furnace problems, and the prior supervising officer gave him permission to stay occasionally at the women's shelter. Relator argues that the public defender coerced him into entering an agreement to the violation because the public defender told him the hearing officer does not like it when parolees contest violations.

{¶ 31} Relator's arguments are without merit. The record contains the May 14, 2019, notification of release violation hearing form, which notified relator that a hearing was to be held to determine if he violated the terms and conditions of his release. The notification also explained his rights with regard to the hearing, including his right to testify, present evidence, subpoena witnesses, cross-examine witnesses, seek disclosure of evidence against him, request representation, and receive a written statement of evidence against him. The notification indicated that one of the rules he was accused of violating was the requirement that he obtain permission from his supervising officer before changing his residence. The notification also specified that since May 3, 2019, relator had failed to notify the supervising office of a change in residency. On the same form, relator initialed a box indicating he had admitted the allegation, with mitigation. Therefore, the magistrate finds that the notification complied with the due process requirements discussed in *Morrissey*, and the hearing officer could rely upon relator's admission to the violation to find relator had failed to comply with his supervisory conditions. Furthermore, the record contains no evidence to support relator's contentions that his prior supervising officer gave him permission to occasionally stay elsewhere or that the public defender coerced him into entering an agreement to the violation. Instead, the record contains evidence demonstrating that relator admitted he had slept at his wife's house, stayed at a shelter, and moved from place

to place at times, when he had reported that he would be residing at his sister's residence. Thus, the magistrate finds relator was afforded due process with regard to the violation of the notification requirement for a change of residency.

{¶ 32} With regard to his second argument, relator contends he was denied his right to due process when the public defender prohibited him from presenting a defense, specifically with regard to the allegation that he violated Ohio law. Relator also asserts that the police officer who conducted the initial interview with Hooten found her statement inconsistent, the security officer at the shelter did not witness relator strike Hooten even though Hooten told the police otherwise, and the assault charges were dismissed. He claims there is no evidence that he violated any law, and he should have been permitted to present a defense at his revocation hearing, but the public defender coerced him into admitting to the violation.

{¶ 33} However, as indicated above, there is nothing in the record to support the claim that the public defender coerced relator into admitting this violation or prohibited him from presenting a defense. At the hearing, relator admitted, with mitigation, that he committed the violation, and there is nothing in the record indicating that he raised a claim regarding deficient legal representation prior to his signing the notification or at the hearing. The evidence before the hearing officer also corroborated that relator assaulted Hooten. The hearing officer specifically found the OAPA provided sufficient corroboration of the violation via the violation report and documentary evidence. The evidentiary record—including the Dayton Police Department detective investigatory report, Hooten's ODRC voluntary statement, and Buettner's violation report—supported the hearing officer's conclusion that relator violated the law when he struck Hooten. Although the police officer investigating the assault found some of Hooten's recitation of the events inconsistent, Hooten explained why she gave differing versions of the events. Also, Hooten did not tell police that the shelter security guard witnessed the assault. She said only that the confrontation ended when the security guard split them up. In addition, Ohio Adm.Code 5120:1-1-17(F)(1) clearly provides that the dismissal of a criminal charge does not prevent the OAPA from finding a violation of the law. Thus, here, that the assault charge against relator was dismissed did not prevent the hearing officer from finding a violation. For these

reasons, the magistrate finds relator was afforded due process with regard to the violation of the requirement that he comply with all laws.

{¶ 34} Accordingly, it is the magistrate's recommendation that relator has not shown a clear legal right to a new parole revocation hearing, and this court should deny relator's complaint for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).