[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cartwright v. Ohio Adult Parole Bd.*, Slip Opinion No. 2023-Ohio-1717.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-1717

THE STATE EX REL. CARTWRIGHT, APPELLANT, *v.* OHIO ADULT PAROLE BOARD, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Cartwright v. Ohio Adult Parole Bd.*, Slip Opinion No. 2023-Ohio-1717.]

*Mandamus—Notice of alleged parole violations provided to inmate served as effective written notice that meets requirements of due process—Evidence presented at parole-revocation hearing is sufficient to support Ohio Parole Board's finding that Ohio Adult Parole Authority had proved by preponderance of the evidence that inmate committed alleged violation—Court of appeals' denial of writ affirmed.*

(No. 2022-1217—Submitted March 21, 2023—Decided May 24, 2023.)

APPEAL from the Court of Appeals for Franklin County, No. 20AP-62, 2022-Ohio-2934.

_____

**Per Curiam.**

**{¶ 1}** Appellee, the Ohio Parole Board, revoked appellant Dana Cartwright's parole after finding that he had engaged in sexual contact with a woman without her consent. Cartwright filed an original action in the Tenth District Court of Appeals, seeking a writ of mandamus ordering the parole board to reinstate his parole and hold a new revocation hearing. The Tenth District denied the writ. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**{¶ 2}** In April 2019, Cartwright was released on parole after serving time in prison for murder and other crimes. As a condition of Cartwright's parole, he agreed to "obey federal, state and local laws and ordinances."

**{¶ 3}** On June 6, 2019, Cartwright visited a hospital where his mother was a patient. A lab technician, T.G., reported to police that an individual—later identified as Cartwright—made inappropriate sexual remarks to her and "groped her repeatedly," including on her leg and "her side below her bra line." A nurse, S.O., reported that Cartwright made inappropriate remarks to her as well, including telling her she could "get [him] washed up" after S.O. asked Cartwright's mother whether she could "get [her] washed up." A parole officer arrested Cartwright the next day.

**{¶ 4}** The Ohio Adult Parole Authority ("APA") provided Cartwright with a written "Notification of Release Violation Hearing." The notice specified two charged violations, both alleging violations of "Rule 1." The notice quoted Rule 1 as stating, "I will obey federal, state and local laws and ordinances, including those related to illegal drug use and registration with authorities." The first count stated: "On or about 6/6/2019, in the vicinity of Dayton, OH you engaged or attempted to engage in sexual contact with [T.G.] without her consent." The second count stated: "On or about 6/6/2019, in the vicinity of Dayton, OH you engaged or attempted to engage in sexual contact with [S.O.] without her consent." The notice

included three boxes—one labeled "Admit," one labeled "Admit with Mitigation," and one labeled "Deny"—of which Cartwright was to initial the applicable box for each count; the notice offered no explanation of what those labels meant. For the count regarding T.G., Cartwright initialed "Admit with Mitigation." For the count regarding S.O., Cartwright initialed "Deny."

**{¶ 5}** On July 8, 2019, the parole board held a hearing on Cartwright's alleged violations. Cartwright was represented by counsel at the hearing. At the hearing, Cartwright *denied* both counts—including count one, the box for which he had initialed "Admitted with Mitigation" on the notice form. The hearing officer did not refer to the fact that Cartwright had admitted with mitigation count one on the notice form.

**{¶ 6}** T.G., S.O., Cartwright, and three police officers testified at the hearing. T.G. testified that Cartwright repeatedly caressed her calf and ultimately grabbed her breast and that she told him multiple times not to touch her. S.O. testified that she witnessed Cartwright touch T.G.'s breast but that he never touched S.O.

**{¶ 7}** The parole board found that the APA had presented sufficient evidence to prove count one, regarding T.G., but insufficient evidence to prove count two, regarding S.O. The parole board revoked Cartwright's parole and ordered that he serve 48 months in prison before being eligible for another release hearing.

**{¶ 8}** Cartwright filed a petition in the Tenth District requesting a writ of mandamus ordering the parole board to reinstate his parole and hold a new revocation hearing. Cartwright claimed two grounds for relief: that his due-process rights were violated because he was not provided adequate notice of the charged violations and that the revocation of his parole was based on insufficient evidence. The Tenth District denied the writ.

**{¶ 9}** Cartwright appealed to this court, raising two issues. First, Cartwright maintains that he was denied due process because he was not provided clear notice of the alleged parole violations. Second, he maintains that there was insufficient evidence of the violation for which the parole board revoked his parole.

## II. LEGAL ANALYSIS

### A. *Mandamus requirements and standard of review*

**{¶ 10}** To be entitled to a writ of mandamus, Cartwright must establish by clear and convincing evidence that (1) he has a clear legal right to the requested relief, (2) the parole board has a clear legal duty to provide it, and (3) he lacks an adequate remedy in the ordinary course of the law. *State ex rel. Love v. O'Donnell*, 150 Ohio St.3d 378, 2017-Ohio-5659, 81 N.E.3d 1250, ¶ 3. This court reviews the court of appeals' judgment de novo. *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 32, 2022-Ohio-1559, 201 N.E.3d 846, ¶ 11.

### B. *Mandamus is not the proper vehicle by which to order Cartwright's release*

**{¶ 11}** In his petition, Cartwright requests that the parole board be ordered to reinstate his parole. To the extent that Cartwright is seeking his immediate release from prison, habeas corpus—not mandamus—is the proper vehicle, and the court of appeals could not order his release through a writ of mandamus. *State ex rel. Johnson v. Ohio Parole Bd.*, 80 Ohio St.3d 140, 141, 684 N.E.2d 1227 (1997). Mandamus is, however, the proper vehicle for obtaining the remedy of an order requiring a new parole-revocation hearing. *Mango* at ¶ 11.

### C. *Notice of alleged violations*

**{¶ 12}** Cartwright argues that the parole board deprived him of due process because, in his view, he did not receive clear notice of the alleged violations that would form the basis of the revocation of his parole. A parolee has certain due-process protections at parole-revocation proceedings. *Mango* at ¶ 14; *see also Morrissey v. Brewer*, 408 U.S. 471, 481-484, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). One of these protections is the right to receive "written notice of the claimed

violations of parole." *Morrisey* at 489; *see also State ex rel. Atkins v. Denton*, 63 Ohio St.2d 192, 193, 406 N.E.2d 1390 (1980).

{¶ 13} The APA notified Cartwright in writing of two alleged violations of "Rule 1," which obligated Cartwright to "obey federal, state and local laws and ordinances." Regarding the violation that he was found to have committed, the notice stated, "On or about 6/6/2019, in the vicinity of Dayton, OH you engaged or attempted to engage in sexual contact with [T.G.] without her consent."

{¶ 14} Despite the specifics in the notice, Cartwright argues that due process required that the written notice specify the particular law he was alleged to have violated. In his mandamus petition and at the Tenth District (although not in the briefs he filed in this court), Cartwright cited a federal case from the Ninth Circuit Court of Appeals, *United States v. Havier*, 155 F.3d 1090 (9th Cir.1998), in support of this proposition. In *Havier*, which involved the revocation of federal supervised release, the Ninth Circuit held that "when a revocation petition alleges the commission of a new crime and the offense being charged is not evident from the condition of probation being violated, a defendant is entitled to receive notice of the specific statute he is charged with violating." *Id.* Notably, in *Havier*, the description in the written notice of the alleged violation created confusion at the hearing as to what law the defendant was accused of violating, leading him to pursue a suboptimal defense strategy. *See id.* at 1094.

{¶ 15} Cartwright has pointed to no Ohio decision that has adopted the *Havier* standard. In contrast, in *Atkins*, 63 Ohio St.2d 192, 406 N.E.2d 1390, this court implicitly declined to adopt a requirement that a statute be specified in the written notice of violation. In *Atkins*, a parolee was provided written notice that he took "money by force" from a restaurant on a specified date. *Id.* at 192. At the revocation hearing, he was found to have committed conspiracy to commit robbery. He later sought a writ of mandamus, arguing that he did not receive written notice of a conspiracy-to-commit-robbery charge. The court of appeals reviewed a

summary of the parole-revocation hearing and determined that Atkins had not shown either prejudice or a lack of opportunity to defend relative to a conspiracy charge and that there was no element of surprise that restricted either the merit defense or mitigation. This court affirmed the court of appeals' denial of the writ. *Id.* at 194.

{¶ 16} The circumstances of the revocation of Cartwright's parole are similar to those in *Atkins*. The APA provided Cartwright with written notice of allegations that he violated the law by engaging or attempting to engage in sexual contact with T.G. without her consent on a specified date. The notice was clear about what Cartwright was alleged to have done. Although the notice did not cite a statute, its language closely tracked that of R.C. 2907.06, which proscribes sexual imposition. The statutory definition of "sexual imposition" does not explicitly use the words "without consent," but it does refer to sexual contact when "[t]he offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard," R.C. 2907.06(A). Moreover, at the revocation hearing, Cartwright's counsel had no difficulty raising a defense or understanding what Cartwright was accused of violating. The parties made arguments about whether Cartwright's actions met the legal definition of "sexual contact" and whether he intended to make T.G. uncomfortable.

{¶ 17} The notice of violations provided to Cartwright served as effective written notice that meets the requirements of due process.

### D. Sufficiency of the evidence

{¶ 18} Cartwright also argues that the parole board's decision to revoke his parole was not supported by sufficient evidence. Sufficient evidence to sustain a revocation of parole exists when there is "substantial evidence" to support the decision; there is " 'substantial evidence' " when the evidence presented by the APA, if believed, is sufficient to satisfy its burden of proving that the parolee violated the terms of his parole. *Mango*, 169 Ohio St.3d 32, 2022-Ohio-1559, 201

N.E.3d 846, at ¶ 18, quoting *State v. Delaney*, 11 Ohio St.3d 231, 236, 465 N.E.2d 72 (1984). The preponderance-of-the-evidence standard applies to parole-revocation hearings. *Id.* at ¶ 19.

{¶ 19} Cartwright argues that although the record shows that he rubbed T.G.'s calf, rubbing a person's calf does not constitute sexual contact. R.C. 2907.01(B) defines "sexual contact" as "any touching of an erogenous zone of another, including *without limitation* the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." (Emphasis added.) We need not decide whether a person's calf can be considered an erogenous zone, however, because the record also contains evidence that Cartwright touched T.G.'s breast.

{¶ 20} Cartwright also argues that he did not violate Rule 1, because he was never charged with any crime related to the incident at the hospital. Parole may be revoked, however, without a parallel criminal indictment or conviction. *Duganitz v. Ohio Adult Parole Auth.*, 92 Ohio St.3d 556, 557, 751 N.E.2d 1058 (2001).

{¶ 21} The remainder of Cartwright's arguments attack the credibility of the victims and the officers who testified at his parole-revocation hearing. The evidence presented by the APA—if believed—is sufficient to support the parole board's finding that Cartwright violated a state law by engaging in sexual contact with another person without the person's consent. T.G. testified that Cartwright grabbed her breast, and S.O. testified that she witnessed this. T.G. testified that she told Cartwright multiple times not to touch her. The circumstances surrounding the touching—such as Cartwright's asking T.G. out for drinks and his telling S.O., "You can get me washed up anytime"—support a finding that Cartwright intended to sexually arouse or gratify himself or T.G. This evidence is sufficient to support the parole board's finding that the APA had proved by a preponderance of the evidence that Cartwright committed the alleged violation.

### III.  CONCLUSION

**{¶ 22}** For the reasons stated above, Cartwright has not shown by clear and convincing evidence that he is entitled to a writ of mandamus ordering the parole board to reinstate his parole and hold a new revocation hearing.  We therefore affirm the court of appeals' denial of the requested writ.

Judgment affirmed.

KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, STEWART, and DETERS, JJ., concur.

BRUNNER, J., concurs in judgment only.

_____

Dana Cartwright, pro se.

Dave Yost, Attorney General, and George Horváth, Assistant Attorney General, for appellee.

_____