[Cite as *State ex rel. Adams v. Hoying*, 2025-Ohio-1562.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Charles Adams, | : | |
| Relator, | : | |
| v. | : | No. 24AP-507 |
| Lisa Hoying, In her official capacity as Chair of the Ohio Parole Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

D E C I S I O N

Rendered on May 1, 2025

---

**On brief:** *Elizabeth R. Miller*, Ohio Public Defender, *Kathleen Evans*, and *Melissa Seabolt*, for relator.

**On brief:** *Dave Yost*, Attorney General, *John H. Bates*, and *Andrew Gatti*, for respondents.

IN MANDAMUS

DINGUS, J.

{¶ 1} Relator, Charles Adams, filed an original action naming the following persons as respondents: Lisa Hoying, chair of the Ohio Parole Board ("parole board"), Scott Widmer, member of the parole board, Jennifer Pribe, chief hearing officer for the parole board, Michael Anderson, chief hearing officer for the parole board, and Greg Emmerth, hearing officer for the parole board. Relator requests that this court issue a writ of mandamus ordering respondents to vacate the order finding he violated a condition of post-release control and to enter an order finding insufficient evidence was presented to find him guilty of the charged violation.

{¶ 2}     This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny relator's request for a writ of mandamus.  No objections have been filed to that decision.

{¶ 3}     Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law.  In accordance with the magistrate's decision, we deny relator's requested writ of mandamus.

*Writ of mandamus denied.*

DORRIAN and LELAND, JJ., concur.

———————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Charles Adams, | : | |
| Relator, | : | |
| v. | : | No. 24AP-507 |
| Lisa Hoying, In her official capacity as Chair of the Ohio Parole Board et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on January 8, 2025

---

*Elizabeth Miller*, Ohio Public Defender, *Kathleen Evans*, and *Melissa Seabolt*, for relator.

*Dave Yost*, Attorney General, *John H. Bates*, and *Andrew Gatti*, for respondents.

---

IN MANDAMUS

{¶ 4} Relator Charles Adams has filed this original action, naming as respondents the following: Lisa Hoying, chair of the Ohio Parole Board ("parole board"), Scott Widmer, member of the parole board, Jennifer Pribe, chief hearing officer for the parole board, Michael Anderson, chief hearing officer for the parole board, and Greg Emmerth, hearing officer for the parole board. Adams seeks a writ of mandamus ordering respondents to vacate the order finding he violated a condition of his postrelease control and to enter an order finding insufficient evidence was presented to find him guilty of the charged violation. For the following reasons, the magistrate recommends denying the writ.

## I. Findings of Fact

{¶ 5}  1. At the time of the filing of this action, relator was an inmate incarcerated at the Lorain Correctional Institution in Grafton, Ohio.

{¶ 6}  2. Respondents, all of whom are sued in their official capacity, are members or hearing officers of the parole board. The parole board is an administrative section of the Ohio Adult Parole Authority ("APA"), which itself is a bureau-level administrative section of the Division of Parole and Community Services, which in turn is a division of the Ohio Department of Rehabilitation and Correction ("ODRC"). *See* R.C. 5149.02.

{¶ 7}  3. As relevant to this matter, Adams was previously convicted in two criminal cases arising out of the Cuyahoga County Court of Common Pleas.

{¶ 8}  4. In Cuyahoga C.P. No. CR-19-646738-A (the "2019 case"), Adams was charged with three criminal offenses relating to conduct involving the victim, K.P. (Stip. at 18-19.)[1] In an entry signed on August 13, 2020, Adams was found guilty, pursuant to a plea, of abduction in violation of R.C. 2905.02(A)(1), a felony of the third degree. The common pleas court sentenced Adams to a 30-month period of incarceration and imposed a discretionary period of postrelease control for up to three years. The court also ordered Adams to have no contact with the victim.

{¶ 9}  5. For purposes of his incarceration under the 2019 case, Adams was assigned an inmate number ("2019 inmate number").

{¶ 10} 6. Adams was released to postrelease control from the prison sentence imposed in the 2019 case on August 26, 2022.

{¶ 11} 7. In Cuyahoga C.P. No. CR-22-675678-A (the "2022 case"), Adams was charged with committing a criminal offense against J.D., a different victim from the one in the 2019 case. (Stip. at 37-38.) Pursuant to a plea, Adams was found guilty of attempted domestic violence in violation of R.C. 2323.02 and 2919.25, a felony of the fifth degree. Adams was sentenced to a two-year period of community control and ordered, as a

---

[1] The joint stipulated submission of evidence in this matter includes various exhibits marked and listed alphabetically. The overall submission is sequentially numbered with the letter "A" in front of the page numbers. In order to avoid confusion, the magistrate identifies the page numbers in the submission by number only.

condition of community control, to complete a CBCF program. Adams was also ordered to have no contact with the victim.

{¶ 12} Thereafter, in an entry in the 2022 case signed on September 28, 2023, Adams was found to be in violation of community control conditions due to his termination from the CBCF. As a result, the common pleas court terminated Adams's community control "in this case" and imposed a sentence of incarceration for a period of 11 months. (Stip. at 22.) In the entry, the court also imposed postrelease control as follows: "As a result of the conviction(s) in this case and the imposition of a prison sentence, and pursuant to R.C. 2967.28(F)(4)(C), the defendant will be subject to a period of post-release control of: up to 2 years of PRC at the discretion of the parole board." (Stip. at 22.)

{¶ 13} 8. For purposes of his incarceration under the 2022 case, Adams was assigned a new inmate number that differed from the number assigned in the 2019 case ("2022 inmate number").

{¶ 14} 9. Adams was again released from incarceration to postrelease control on May 8, 2024.

{¶ 15} 10. While on postrelease control, Adams was required to follow certain conditions of supervision or conditions of postrelease control. A copy of the conditions of postrelease control was signed by Adams on May 13, 2024. The following notice was printed above Adams's signature:

> I have read or had read to me the conditions of my Post Release Control. I fully understand these conditions and I agree to follow them. I understand that violation of any of these conditions may result in the revocation my Post Release Control which may result in additional imposed sanctions, including imprisonment. In addition, I understand that I must follow these conditions until notified by my supervising officer. By my signature I acknowledge that I have received a copy of these conditions of supervision.

(Emphasis removed.) (Stip. at 11.) Rule 1 of the conditions of postrelease control provided as follows: "I will obey federal, state and local laws and ordinances, including those related to illegal drug use and registration with authorities. I will have no contact with the victim of my current offense(s) or any person who has an active protection order against me." (Stip. at 10.) Only the 2022 inmate number was listed on the conditions of

postrelease control. The conditions of postrelease control did not include the case numbers from either the 2019 case or the 2022 case.

{¶ 16} 11. In a notification of release violation hearing, which was dated June 11, 2024 and signed by Adams on June 14, 2024, Adams was charged with violating Rule 1 of the conditions of postrelease control. The following allegation was provided in support of the charge: "On or [a]bout [June 4, 2024] [y]ou had contact with K.P." (Stip. at 13.) Adams denied the charged violation.

{¶ 17} 12. In a violation report signed on July 3, 2024 by Steven Chapple, Adams's parole officer, Chapple provided the following statement regarding the charged violation:

> On [May 8, 2024] [t]he offender was released from Lorain Correctional Institution and placed on 1.5 years of PRC,[2] after serving a prison sentence of 11 months for Attempted Domestic Violence (F5), a new offence, which his prior PRC supervision was added onto. * * * The offender was ordered to have no contact with J.D., the victim of his current offense as well as K.P., the victim of his prior offense, that was carried over due to failing to complete PRC and being reconvicted of this new case.

(Stip. at 7.)

{¶ 18} 13. A postrelease control violation hearing was held on July 31, 2024. Parole Officer Chapple testified that Adams was advised as part of his conditions of postrelease control that he could not have contact with the victim of his current offense. Chapple stated that these condition of postrelease control applied to K.P. as the victim from the 2019 case. Chapple stated that Adams remained under postrelease control supervision under the 2019 case. Chapple testified that the postrelease control from the 2019 case never terminated because Adams was resentenced on a new felony under the 2022 case. Even though Adams was placed under supervision under the inmate number from the 2022 case, Chapple agreed that Adams "owed time under the previous inmate number" assigned as part of the 2019 case. (Stip., Ex. O at 9:09-9:13.) When asked whether "when he got out on this number, that would have put him also under the supervision for that number since he owed time, correct," Adams responded, "Correct." (Stip., Ex. O at 9:19-9:27.)

---

[2] "PRC" is a common abbreviation for "postrelease control." *See State ex rel. Massimiani v. Ohio Adult Parole Auth.*, 10th Dist. No. 23AP-371, 2024-Ohio-1181, ¶ 9, fn. 2, citing *State v. Jordan*, 10th Dist. No. 13AP-666, 2014-Ohio-1193, ¶ 3.

{¶ 19} Chapple testified that, upon release, Adams was to report to a halfway house. When Adams did not directly report there, Chapple contacted Adams. According to Chapple, Adams told him that he was residing with a family member. Upon instruction from Chapple, Adams reported to the halfway house.

{¶ 20} At some point thereafter, Adams provided Chapple with the address of a residence in Cleveland, Ohio where he wished to live. In order to determine whether this residence would be approved, Chapple planned to visit the residence on June 4, 2024. Using GPS monitoring, Chapple located Adams on that date at a residence in a different Ohio city.

{¶ 21} As reflected in Chapple's testimony and body worn camera footage, which was admitted and played at the hearing, Chapple and another parole officer found Adams at the residence with an individual whom Adams identified as "T.S." (Stip., Ex. O at 13:10-13:16.) While inside the residence with Adams and the individual identified by Adams as T.S., Chapple found mail that was addressed to K.P. Under questioning from Chapple and the other parole officer about the identity of T.S. and the reasons for possessing mail belonging to K.P., Adams continued to insist that the other individual in the residence was named T.S. Eventually, however, Adams disclosed that the individual he identified as T.S. was in fact K.P. When asked whether Adams acknowledged that he had a case with K.P., Chapple responded, "Yes, he did." (Stip., Ex. O at 27:45-27:53.)

{¶ 22} Chapple spoke with the individual Adams identified as T.S., who admitted that she was actually K.P. Chapple testified that Adams never requested permission to have contact with K.P.

{¶ 23} 14. Adams commenced this action with the filing of his complaint for a writ of mandamus on August 16, 2024.

{¶ 24} 15. Adams filed an amended complaint on August 29, 2024.

{¶ 25} 16. The parties filed a joint stipulated submission of evidence on October 16, 2024. Among other documents, ODRC Policy 105-PBD-08 was included in the submission of evidence. The parties separately filed an audio recording of the July 31, 2024 postrelease control violation hearing.[3]

---

[3] No transcript of this hearing was submitted as part of the record.

## II. Discussion and Conclusions of Law

{¶ 26} Adams asserts entitlement to a writ of mandamus because insufficient evidence was presented to support the postrelease control violation finding.

## A. Due Process in Release Revocation Proceedings

{¶ 27} The Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution guarantee due process of law. *State ex rel. Haylett v. Ohio Bur. of Workers' Comp.*, 87 Ohio St.3d 325, 331 (1999) ("The Fourteenth Amendment to the United States Constitution prohibits any state from depriving 'any person of life, liberty, or property, without due process of law.' "); *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 422 (1994), citing *Direct Plumbing Supply Co. v. Dayton*, 138 Ohio St. 540, 544 (1941) (stating that the Ohio Constitution's " 'due course of law' provision" in Article I, Section 16 "is the equivalent of the 'due process of law' provision in the Fourteenth Amendment to the United States Constitution"). The revocation of release due to a postrelease control violation, like the revocation of parole, implicates a liberty interest and is, therefore, subject to certain procedural protections. *State ex rel. Barber v. Hoying*, 10th Dist. No. 23AP-71, 2023-Ohio-2204, ¶ 11. *See also Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972); *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 169 Ohio St.3d 32, 2022-Ohio-1559, ¶ 18.

{¶ 28} Because revocation proceedings are not criminal prosecutions, a person subject to a revocation proceeding is not entitled to the full range of procedural rights accorded to a defendant in a criminal trial. *See Morrissey* at 480; *Barber* at ¶ 12. "The minimal requirements of due process in revocation proceedings include, but are not necessarily limited to, the following: (1) written notice of the alleged violations; (2) disclosure to the person subject to revocation of the evidence against them; (3) an opportunity to be heard in person and to present witnesses as well as documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer finds good cause to prohibit it; (5) a neutral and detached hearing body; and (6) a written statement by the factfinder as to the evidence relied on and the reasons for revocation." *Barber* at ¶ 12, citing *State v. Cardinal*, 10th Dist. No. 09AP-623, 2010-

Ohio-3836, ¶ 15. *See also* Ohio Adm.Code 5120:1-1-18(A)(5) (listing other rights for a releasee at a postrelease control release revocation hearing).

{¶ 29} In addition to the due process protections listed above, a postrelease control violation finding that results in the revocation of release must be based on sufficient evidence in order to satisfy the requirements of due process. *See Barber* at ¶ 27; *State ex rel. Braddy v. Hoying*, 10th Dist. No. 23AP-197, 2023-Ohio-2597, ¶ 20; *Mango* at ¶ 18. A decision finding that a releasee has violated the terms of postrelease control is supported by sufficient evidence where there exists "substantial evidence" to support the decision. *Mango* at ¶ 18. Substantial evidence exists where "the evidence presented by the APA, if believed, is sufficient to satisfy the burden of proof." *Id.* At release revocation proceedings for a postrelease control violation, a violation must be established by the preponderance of the evidence. *Braddy* at ¶ 21; Ohio Adm.Code 5120:1-1-18(A)(3). Thus, there exists sufficient evidence to support a finding of a postrelease control violation where the evidence presented by the APA, if believed, demonstrates the violation by a preponderance of the evidence. *Braddy* at ¶ 21.

## B. Mandamus

{¶ 30} A writ of mandamus is an extraordinary remedy " 'issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specifically enjoins as a duty.' " *State ex rel. Russell v. Klatt*, 159 Ohio St.3d 357, 2020-Ohio-875, ¶ 7, quoting R.C. 2731.01. *See State ex rel. Blachere v. Tyack*, 10th Dist. No. 22AP-478, 2023-Ohio-781, ¶ 13 (stating that the purpose of mandamus is to compel the performance of an act that the law specifically enjoins as a duty resulting from an office, trust, or station). In order for a writ of mandamus to issue in this matter, Adams must establish by clear and convincing evidence (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of respondents to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, ¶ 19. " 'Clear and convincing evidence' is a measure or degree of proof that is more than a preponderance of the evidence but less than the beyond-a-reasonable-doubt standard required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the

fact sought to be established." *State ex rel. Ware v. Crawford*, 167 Ohio St.3d 453, 2022-Ohio-295, ¶ 14, citing *State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. A writ of mandamus may issue where there was insufficient evidence to support a postrelease control violation finding that resulted in the revocation of release. *Braddy* at ¶ 20, citing *Barber*, 2023-Ohio-2204, at ¶ 11.

## C. Analysis

{¶ 31} Adams asserts his due process rights were violated because he did not have notice of the conduct that was prohibited under the conditions of postrelease control. First, Adams asserts that Ohio Adm.Code 5120:1-1-12(D) provides a releasee with procedural protection by requiring notice of conditions of postrelease control. Ohio Adm. Code 5120:1-1-12(D) provides as follows: "An inmate shall receive written notice of the conditions of release including any special conditions that have been imposed upon him by the parole board prior to the inmate's release from the institution and shall acknowledge by signature the receipt of, and intention to comply with, the conditions imposed." In support of his argument that the lack of notice of special conditions has been found to violate due process, Adams cites to *State v. Springer*, 2d Dist. No. 2014-CA-86, 2015-Ohio-1941.

{¶ 32} In *Springer*, the defendant was released on her own recognizance after a plea hearing without any condition of bond imposed other than a requirement that she comply with the orders or recommendations of a county job and family services agency. At the sentencing hearing, the trial court ordered the defendant to submit to a drug screen. The defendant tested positive for cocaine, the usage of which she ultimately admitted during sentencing. The trial court found the defendant had violated a condition of her bond and sentenced her to 18 months in prison pursuant to R.C. 2929.13(B)(1)(b)(iii), which provides the trial court with discretion to impose a prison term where the offender has violated a term of the conditions of bond as set by the court.

{¶ 33} On appeal, the defendant contended that because she was not expressly instructed to refrain from illegal drug use while awaiting sentencing on her own recognizance, her admitted usage of cocaine did not constitute a violation of the stated bond conditions. The defendant asserted the court erred when it sentenced her to 18

months in prison rather than the term of community control mandated by R.C. 2929.13(B)(1)(a). The court of appeals agreed, finding the trial court violated the defendant's right to due process when, without any prior notice, it ordered her to submit to a drug screen at the sentencing hearing. The court found that "a trial court is required to provide notice to a defendant if it intends to order him or her to submit to a drug screen as a condition of an own-recognizance bond." *Springer*, 2015-Ohio-1941, at ¶ 20. Because the court found that the defendant "did not violate 'a term of the conditions of bond *as set by the court*,' the trial court plainly erred when it imposed a prison sentence upon [the defendant]." (Emphasis in original.) *Id.*, quoting R.C. 2929.13(B)(1)(b)(iii).

{¶ 34} Unlike in *Springer*, however, Adams was placed on notice of the conduct that was prohibited while on postrelease control. Consistent with Ohio Adm.Code 5120:1-1-12(D), Adams received a written copy of the conditions of postrelease control, which he signed. Rule 1 of the conditions of postrelease control provided in part that "I will have no contact with the victim of my current offense(s)." (Stip. at 10.) Adams does not dispute that he remained on postrelease control for the 2019 case at the time he was charged with violating this condition of postrelease control. There is also no dispute that K.P., the person who was present with Adams when Parole Officer Chapple arrived to investigate the residence, was Adams's victim in the 2019 case. Thus, the conditions of postrelease control placed Adams on notice that he was not to have contact with K.P., as she was a victim of an offense for which he was at that time on postrelease control. Because Adams was on notice of the condition he was charged with violating, *Springer* is inapplicable to this matter.

{¶ 35} Next, citing *State v. Jones*, 49 Ohio St.3d 51 (1990), Adams argues that notice of the prohibited conduct must be based on a commonsense reading of the conditions imposed. Adams argues that in *State v. Birchler*, 10th Dist. No. 00AP-311, 2000 Ohio App. LEXIS 4622 (Oct. 5, 2000), this court applied *Jones* to find a probation revocation invalid.

{¶ 36} In *Birchler*, the defendant entered an *Alford* plea and was sentenced to a six-month term of imprisonment and a five-year term of probation, which included a requirement to obtain sex offender counseling as ordered by the probation officer. While the defendant was on probation, his probation officer filed a request for revocation of

probation based on the defendant's termination from the sex offender treatment program. Based on a finding that the defendant's termination from the program constituted a violation of the conditions of probation, the court revoked the defendant's probation and ordered him to serve the balance of his sentence.

{¶ 37} Upon appeal by the defendant, this court reversed. The court noted the defendant was terminated from the sex offender program because he failed to complete assignments. Specifically, in response to questions, the defendant repeatedly insisted that he did not have a victim. The program's executive director testified that the defendant's inability to complete the program was solely due to his failure to acknowledge specific criminal conduct against a victim or any victim at all. Noting that "[a]n *Alford* plea is considered a qualified guilty plea because it allows a defendant to enter a guilty plea yet maintain his or her innocence," this court stated that "[w]e cannot reconcile [the defendant's] *Alford* plea and the requirement as a part of his counseling session that he admit he had a victim." *Birchler* at *4.

{¶ 38} This court noted the Supreme Court of Ohio's pronouncement in *Jones* that the conditions of probation " 'must be clear enough to notify the probationer of the conduct expected of him.' " *Birchler* at *6-7, quoting *Jones*, 49 Ohio St.3d at 55. This court found that, contrary to that pronouncement, the trial court in *Birchler* "did not inform [the defendant] that he would be required to admit that he had a victim in order to complete probation, despite his maintenance of factual innocence pursuant to *Alford*." *Id.* at *7. Additionally, the court noted that because the defendant "did not have notice of this term of probation, which was significant due to his *Alford* plea, he could not have been expected to file a direct appeal of his probation requirements after the original sentencing hearing." *Id.* The court held that "[u]nder the circumstances of this case, the trial court abused its discretion in revoking [the defendant's] probation based upon [the] reasoning" that the defendant "did not have notice that he would be required to admit specific criminal conduct or that there was a victim of such conduct." *Id.* at *8.

{¶ 39} *Birchler* is inapposite to the matter at hand. First, the holding of *Birchler* was explicitly limited to the circumstances of that case. Second, unlike in *Birchler*, in which the trial court did not inform the defendant of the potential implications of an *Alford* plea

on the ability of the defendant to successfully complete a condition of probation, here, Adams was provided with notice of the condition in question.

{¶ 40} Adams nevertheless argues that the condition was not clear under a commonsense reading of the conditions of postrelease control because there was "no mention of the 2019 case, Mr. Adams's former inmate number, or his prior term of PRC." (Adams's Brief at 16.) Adams points out that the only inmate number listed on the conditions of postrelease control was the 2022 inmate number assigned as a result of the 2022 case, for which K.P. was not the victim. While the conditions of postrelease control did not list Adams's 2019 inmate number, Adams's inmate number is not determinative of whether he was on postrelease control for any given offense. The conditions of postrelease control did not state that he was only on postrelease control for the 2022 case, or that the conditions only applied to the offense related to the inmate number for the 2022 case. Rather, the condition in question applied to Adams's "current offense(s)." (Stip. at 10.) Adams does not point to a requirement, either imposed by statute or administrative rule, that the conditions of postrelease control contain any mention of an inmate number at all.

{¶ 41} Though this condition could have been clearer by providing Adams with a list of the offenses for which he was currently on postrelease control, the magistrate cannot find a " 'commonsense' reading of the condition" fails to provide Adams "with fair notice of what conduct is prohibited." *Jones* at 54. Though Adams was on postrelease control for multiple offenses, the number of offenses for which Adams was on postrelease control does not prevent the condition from being "clear enough to notify the [releasee] of the conduct expected of him." *Jones* at 55. Importantly, Adams does not argue that he was not initially notified that he was on postrelease control for the 2019 case, or that he was informed that such postrelease control had terminated.

{¶ 42} Indeed, the condition appears to have been clear enough for Adams to actively attempt to evade its enforcement by repeatedly lying to his parole officer. Rather than admitting that the victim of his 2019 offense was present with him at the residence, Adams lied to Parole Officer Chapple by identifying K.P. using a different name. Adams also attempted to evade questions about the presence of mail addressed to K.P. found in the residence. While not determinative of whether or not the condition was in fact imposed

under the terms of the conditions of postrelease control, this evidence is relevant to show that Adams was aware of the condition's existence and its implications for his postrelease control.

{¶ 43} Next, Adams argues respondents failed to impose the prior conditions of postrelease control on him when he signed the conditions of postrelease control document on May 13, 2024. Adams cites to ODRC Policy No. 105-PBD-08 to support his argument. The policy provided in part that "[i]n the case of a recommissioned supervisee, the designated Parole Board staff shall identify all conditions of supervision imposed upon the supervisee prior to the supervisee's last release from prison and ensure that those sanctions are carried forward to the supervisee's current PRC assessment." (Stip. at 33.) Upon the "completion of the PRC assessment," the parole board was required under the policy to "forward the PRC notification to the [incarcerated person]." *Id.* The PRC notification is required to "contain the parole board decision regarding the imposition of PRC" and "include the person's release date at the time of the assessment, the term of PRC imposed, eligibility for reduction, and any sanctions or special conditions imposed by the parole board." *Id.*

{¶ 44} Adams argues this policy places on respondents "a duty to affirmatively carry forward and notify the supervisee of any conditions of supervision they are expected to follow." (Adams's Brief at 17.) Adams argues that because the APA allegedly failed to carry forward any prior conditions of postrelease control and there was no mention in the conditions of postrelease control that Adams was prohibited from having contact with K.P., he was not given notice that he was prohibited from having contact with K.P. under the conditions of postrelease control.

{¶ 45} First, "the creation of a duty enforceable in mandamus is the function of the legislative branch of government." *State ex rel. Shie v. Ohio Adult Parole Auth.*, 167 Ohio St.3d 450, 2022-Ohio-270, ¶ 11. "An internal policy of an agency does not create a legal duty enforceable in mandamus." *Id. State ex rel. Clough v. Franklin Cty. Children Servs.*, 144 Ohio St.3d 83, 2015-Ohio-3425, ¶ 15. Adams has not established that ODRC Policy No. 105-PBD-08, an internal ODRC policy, creates a duty enforceable in mandamus. *See Shie* at ¶ 9 (finding relator was not entitled to relief because an internal ODRC policy, ODRC Policy 105-PBD-09, did not give rise to a legal duty cognizable in mandamus). Second,

regardless of the applicability of the policy, Adams was notified of the condition that he was not to have contact with the victim of his current offense, which in this case included K.P. because Adams was still on postrelease control for the 2019 case in which K.P. was the victim. Adams's arguments regarding ODRC Policy No. 105-PBD-08 do not establish he has a clear legal right to the requested relief or that respondents were under a clear legal duty to provide it.

{¶ 46} In summary, Adams has not established his due process rights were violated. The conditions of postrelease control notified Adams that he was not to have contact with the victim of his current offense or offenses. Adams remained on postrelease control for the 2019 case when he was discovered to be in contact with K.P., the victim in that case. Therefore, Adams has not established that the postrelease control violation was based on insufficient evidence.

## D. Conclusion

{¶ 47} For the foregoing reasons, the magistrate finds Adams has not established a clear legal right to the requested relief or that respondents were under a clear legal duty to provide it. Accordingly, it is the decision and recommendation of the magistrate that this court should deny Adams's request for a writ of mandamus.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.