[Cite as *State ex rel. Woodard v. Hoying*, 2026-Ohio-1351.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Keimarkus Woodard, :

      Relator, :

                                        No. 24AP-307

v. :

                                    (REGULAR CALENDAR)

Lisa Hoying, APA, :

      Respondent. :

---

D E C I S I O N

Rendered on April 14, 2026

---

**On brief:** *Keimarkus Woodard*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *George Horvath*, for respondent.

---

IN MANDAMUS

JAMISON, J.

{¶ 1} Relator, Keimarkus Woodard, seeks a writ of mandamus ordering respondent, Lisa Hoying, of the Ohio Adult Parole Authority ("OAPA"), to hold another parole revocation hearing finding him not guilty of any parole violations, and remove him from post-release control due to unfair treatment, retaliation, and further punishment. The magistrate recommended denying relator's request for a writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate recommended that we deny relator's request for writ of mandamus because relator failed to show that OAPA had a clear legal duty to find that he did not violate the conditions of his supervision or that OAPA abused its discretion when it found that he violated the conditions of his supervision. The magistrate found that OAPA's conclusion that relator violated the terms of his parole was supported by substantial evidence. We agree.

{¶ 3} The magistrate's decision informed the parties of their right to file objections to his recommendation under Civ.R. 53(D)(3)(b). Relator has filed no objection to the magistrate's decision. "If no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c).

{¶ 4} Our review of the magistrate's decision reveals no error of law or other evidentiary defects. *See, e.g.*, *State ex rel. Alleyne v. Indus. Comm.*, 2004-Ohio-4223 (10th Dist.) (adopting the magistrate's decision where no objections were filed).

{¶ 5} Finding no error of law or other defect on the face of the magistrate's decision, we adopt the magistrate's decision in its entirety, including the findings of fact and conclusions of law, as our own decision. We find that relator has not established that he is entitled to a writ of mandamus. Accordingly, we deny the writ of mandamus and dismiss the action.

*Writ of mandamus denied.*

DORRIAN and LELAND, JJ., concur.

———————————

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keimarkus Woodard, | : | |
| Relator, | : | |
| v. | : | No. 24AP-307 |
| Lisa Hoying, APA, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

MAGISTRATE'S DECISION

Rendered on January 12, 2026

*Keimarkus Woodard*, pro se.

*Dave Yost*, Attorney General, and *George Horvath*, for respondent.

IN MANDAMUS

{¶ 6} Relator, Keimarkus Woodard, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Lisa Hoying, Ohio Adult Parole Authority ("OAPA"), to hold another parole hearing, find him not guilty of any parole violations, and remove him from post-release control due to unfair treatment, retaliation, and further punishment.

Findings of Fact:

{¶ 7} 1. Relator was formerly an incarcerated individual.

{¶ 8}   2. Respondent Hoying is the chair of the parole board in Ohio.

{¶ 9}   3. On December 7, 2023, while relator was on post-release control for aggravated robbery with firearm specification, he was arrested by border patrol agent Dean Gribbons after a traffic stop in Perrysburg, Ohio. Agent Gribbons completed a report of the incident on December 7, 2023. The details of the traffic stop and the report will be discussed infra.

{¶ 10}   4. Relator's parole officer issued a violation report on January 3, 2024, which listed the following post-release violations: (1) RULE 1 (requiring claimant to obey federal, state, and local laws and ordinances) – On December 7, 2023, relator failed to comply with a lawful order of border patrol agent by fleeing the scene after being stopped for erratic driving; (2) RULE 1 (requiring claimant to obey federal, state, and local laws and ordinances) – On December 7, 2023, relator knowingly prepared for shipment, transportation, delivered, or prepared for distribution a controlled substance or a controlled substance analog, when he threw what was determined to be a packet of fentanyl from his car window while fleeing the border patrol agent; (3) RULE 3 (requiring relator to obtain written travel permits from the OAPA before leaving the State of Ohio) – On October 24, 2023, relator was in the State of Michigan without the written permission of the OAPA; and (4) RULE 5 (prohibiting claimant from entering the grounds of any correction facility or attempting to visit or communicate with any prisoner without written permission from his supervising officer) – On or after October 22, 2023, relator communicated with Jaquone Phillips, a prisoner. The report also indicated that relator had a prior criminal history that included an 11-year-jail sentence for aggravated robbery and felonious assault, as well as multiple juvenile offenses that were adjudicated by the Lucas County Juvenile Court, including assault, probation violation, trafficking in drugs, escape, safe school ordinance, possession of drugs, receiving stolen property, disorderly conduct, loitering, and theft. On December 13, 2023, the probation officer met with relator in jail for service of his violation paperwork, and relator signed a waiver to appear at his hearing, originally scheduled for January 10, 2024. He later revoked the waiver. His violation hearing was then scheduled to take place on February 7, 2024.

{¶ 11}   5. Violation hearings took place over three days (February 7, March 6, and April 3, 2024), with several continuances being granted by the hearing officer for time

constraints, insufficient time to complete hearing, and unavailability of the hearing officer/hearing site. OAPA presented testimony from several witnesses during the hearings, and relator testified on his own behalf. During the March 6, 2024, hearing, relator requested counsel, which was provided, but he ultimately decided to continue without counsel. Furthermore, prior to the March 6, 2024, hearing, the location indicated in the service paperwork where the arrest took place for the Rule 1 charges was amended from Akron, Ohio, to Perrysburg, Ohio.

{¶ 12} The relevant testimony presented by the respective witnesses at the hearings will be further detailed in the discussion of the merits, infra, as necessary, but the witnesses and the general subject-matter of their testimony was as follows:

{¶ 13} (1) Agent Gribbons, a border patrol agent who initiated the traffic stop of relator's vehicle based upon erratic driving and suspicious body movements. Gribbons testified that relator stated he was returning from Cleveland but then fled in the vehicle when Gribbons walked around to the other side of the vehicle. During the ensuing pursuit, he thought he saw something come from the passenger window and land in a grassy area on the side of the road.

{¶ 14} (2) Trooper Kyle Mayle, a police officer who located a sealed bag in the grassy area where something had come from relator's car window. However, his testimony was not recorded due to an error.

{¶ 15} (3) Agent Kevin Lyons, an agent for the Drug Enforcement Agency who testified that the substance in the packet was tested to be one-quarter of a kilogram of fentanyl.

{¶ 16} (4) Investigator Waylon Wine, an investigator at Trumbull Correctional Institution, who testified regarding emails relator sent to an inmate at TCI, Jaquone Phillips, related to drugs relator was supposed to supply to the inmate.

{¶ 17} (5) Officer Melissa Magg, an intelligence analyst, who testified that relator had contacted the inmate regarding a drug order, as well as 27 other contacts with inmates at other institutions.

{¶ 18} (6) Relator, who argued, among other things, that the OAPA should not have been permitted to use any evidence from is phone because they had not seized it from him

but, rather, took it from the sheriff's department, and, therefore, it was not taken during a search of his property.

{¶ 19} 6. On April 3, 2024, the hearing officer issued a notice of findings of release violation hearing, in which the hearing officer found the following: (1) relator is guilty of both Rule 1 violations and the Rule 5 violation, and not guilty of the Rule 3 violation; and (2) relator is to serve 121 days of incarceration to begin on April 4, 2024.

{¶ 20} 7. On May 16, 2024, relator filed his petition for writ of mandamus.

Conclusions of Law:

{¶ 21} The magistrate recommends that this court deny relator's petition for a writ of mandamus.

{¶ 22} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A relator bears the burden of persuasion to show entitlement to a writ of mandamus by clear and convincing evidence. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26. "Clear and convincing evidence" is a measure or degree of proof that is more than a preponderance of evidence, but it does not extend the degree of certainty beyond a reasonable doubt as required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the fact sought to be established. *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 14.

{¶ 23} Parole-revocation proceedings and trial proceedings are distinct, and a parolee is not entitled to the same level of due-process protection as a trial defendant. Revocation hearings are excepted under the Ohio Rules of Evidence and, thus, fall outside of the scope of those rules. Evid.R. 101(A) and (C)(3). Therefore, the Rules of Evidence do not apply to probation-revocation hearings. *State v. Kaimachiande*, 2019-Ohio-1939, ¶ 20 (3d Dist.), citing *State v. Newsome*, 2017-Ohio-7488, ¶ 21 (4th Dist.) and Evid.R. 101(C)(3); *State v. Simpkins*, 2006-Ohio-3496, ¶ 13, fn. 3 (8th Dist.). The rationale behind this exception is, given the informality of this type of proceeding, the trier of fact should be able to consider any reliable and relevant evidence to determine whether the probationer has

violated the conditions of his probation. *Columbus v. Bickel*, 77 Ohio App.3d 26, 36-37 (10th Dist.1991.). Thus, hearsay evidence can be permissible in a community-control-revocation hearing, even if it would have been inadmissible in a criminal trial. *See Jackson* (the rules of evidence do not apply to parole-revocation proceedings; the OAPA can and should consider statements that would be barred by the hearsay rule in formal trial settings); *State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1559, ¶ 14 (finding parole board may admit hearsay evidence because a parolee contesting revocation does not have the same confrontational rights as does a trial defendant; accordingly, the arresting officer's testimony at the revocation hearing may be considered, even if it contained hearsay statements); *State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 16 (1991) (finding the parole board may admit hearsay); *Kaimachiande* at ¶ 20 citing *State v. Ohly*, 2006-Ohio-2353, ¶ 21 (6th Dist.).; *State v. Dagley*, 2022-Ohio-2671 (8th Dist.) (no due process when parole authority considers unsworn statements of the probation officer at the hearing, and such does not render the sentence contrary to law). Furthermore, evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in probation- and/or parole-revocation proceedings. *State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82 (1996), paragraph two of the syllabus.

{¶ 24} Nevertheless, although a parolee facing revocation does not have the same due-process rights as does a trial defendant, the United States Supreme Court has established a minimum due process threshold for such proceedings. In *Morrissey v. Brewer*, 408 U.S. 471 (1972), the United States Supreme Court held that a parolee is entitled to certain due-process protections at a parole-revocation hearing. *Id*. at 488-90. These include written notice of the claimed violations of parole, disclosure to the parolee of evidence against him, an opportunity to be heard in person before a neutral and detached hearing body, the right to present witnesses and documentary evidence, the right to confront and cross-examine adverse witnesses under most conditions, and a written statement by the factfinder relating the evidence relied on and reasons for revoking parole. *Id*.

{¶ 25} If a relator can prove that a due-process violation occurred at a parole-revocation hearing, mandamus is the appropriate remedy for compelling the parole

authority to conduct a second hearing. *Mango* at ¶ 11, citing *State ex rel. Ellison v. Black*, 2021-Ohio-3154, ¶ 12.

{¶ 26} The United States Supreme Court has suggested that due process requires sufficient evidence to support the revocation of parole, probation, or other types of postrelease supervision. *Mango* at ¶ 18, citing *Black v. Romano*, 471 U.S. 606, 615-16 (1985) (finding that the state trial court's decision to revoke an offender's probation satisfied due process, agreeing that there was sufficient evidence to support that the defendant had violated the conditions of his probation). There is sufficient evidence to sustain a revocation of parole when there is "substantial evidence" to support the decision. *Id.*, citing *State v. Delaney*, 11 Ohio St.3d 231, 236 (1984). There is "substantial evidence" to support a finding of a parole violation when the evidence presented by the parole authority, if believed, is sufficient to satisfy the burden of proof. *Id*, citing *Consol. Edison Co. of New York v. Natl. Labor Relations Bd.*, 305 U.S. 197 (1938) (finding that substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion); and *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992) (finding substantial evidence is evidence with some weight; it must have importance and value). The purpose of a parole-revocation hearing " 'is to determine whether there is a preponderance of the evidence, taking the record as a whole, that the releasee violated a condition of release or post-release control sanction.'" *Mango* at ¶ 19, quoting Ohio Adm.Code 5120:1-1-18(A)(3).

{¶ 27} Furthermore, a court hearing a matter in mandamus may not reweigh the credibility of the witnesses. *State ex rel. Jackson v. Wilkinson*, 10th Dist. No. 94APD12-1789 (June 20, 1995) (rejecting relator's claim that his parole officer perjured herself and that the OAPA believed her perjury, given the court is unable to reweigh the credibility of the respective witnesses at a revocation hearing); *State v. Motz*, 2020-Ohio-4356, ¶ 31 (12th Dist.) (noting that a trial court determines the credibility of the witnesses at a revocation proceeding).

{¶ 28} Importantly, "the creation of a duty enforceable in mandamus is the function of the legislative branch of government." *State ex rel. Shie v. Ohio Adult Parole Auth.*, 2022-Ohio-270, ¶ 11. "An internal policy of an agency does not create a legal duty enforceable in mandamus." *Id. State ex rel. Clough v. Franklin Cty. Children Servs.*, 2015-Ohio-3425,

¶ 15. It has also been held that ODRC Policy No. 105-PBD-09, an internal ODRC policy relied upon by relator in the present case, does not give rise to a legal duty cognizable in mandamus. *Shie* at ¶ 9. *See also State ex rel. Adams v. Hoying*, 2025-Ohio-1562, ¶ 3 (10th Dist.). (finding it was not shown that ODRC Policy No. 105-PBD-08, an internal ODRC policy, creates a duty enforceable in mandamus).

{¶ 29} In the present case, relator raises the following arguments: (1) ODRC Policy 105-PBD-09 requires that service must be completed within 15 business days, but after his violations were amended at the second hearing to change the location of the Rule 1 violations, he was never re-served the notice of violations; (2) there was no evidence that an odor was coming from his car; he does not smoke; his violation report shows that he tested negative for marijuana; the arrest date was the same date marijuana became legal in Ohio; and no marijuana was found on his person; (3) the border patrol agent's report lists failure to yield, but he was never charged with such; (4) the border patrol agent's report indicated he had a criminal history that included guns and drugs, which was false; (5) juvenile delinquencies are not considered "criminal" history; (6) the drugs did not belong to him and did not contain his DNA; (7) upon pulling over his car, the border patrol agent asked him about a former gun offense and what he went to jail for, but after he denied the agent's request to search the car and the agent stated he was not under arrest or being detained, the agent walked away, so relator drove away; (8) his parole officer stated he became aware of the communication with inmate Phillips the day after the incident with the border patrol agent, when he actually knew of it months prior; and (9) even though in the conditions of supervision relator agreed to any warrantless search of his person, motor vehicle, resident, or personal property by his parole officer and ODRC at any time, his parole officer violated his Fourth Amendment rights when the parole officer took his phone from the county jail officer because this constituted a seizure and search and not a search and seizure.

{¶ 30} Relator's first argument is that, although he was served with the original notice of violation hearing within the time required by ODRC Policy 105-PBD-09, he was not served again with the notice after the amendment of the location for the Rule I violations. However, notwithstanding that a violation of ODRC policy does not give rise to a legal duty cognizable in mandamus, relator does not provide any authority for the

proposition that the OAPA was required to serve him again after the amendment of the notice of violation hearing in this case. Although relator cites ODRC Policy 105-PBD-09, and the policy does indicate the procedure for service of the notice of violation hearing, nothing in that policy indicates the notice must be served again when a hearing officer permits the amendment of the notice. Notably, the amendment merely modified the stated location of the events for the Rule 1 violations and did not materially alter the allegations or essence of the violations. Although relator alleges that he was prejudiced by this amendment of the location from Akron, Ohio, to Perrysburg, Ohio, he does not explain how he was prejudiced. Relator admits that he was aware where the violations took place, as he informed his parole officer that the location was inaccurate. Relator received proper notice of the violations, despite the error in location, and relator does not assert that the amendment had any effect on his ability to defend against the violations at hearing. Given these circumstances, the magistrate cannot find that the OAPA was under any duty, either legal or pursuant to ODRC policy, to re-serve relator the notice of violation hearing after it amended the location of the events for the Rule 1 violations, and relator suffered no due process infringement or prejudice as a result of the amendment.

{¶ 31} Relator next argues that there was no evidence that a marijuana odor was coming from his car; he does not smoke; his violation report shows that he tested negative for marijuana; the arrest date was the same date marijuana became legal in Ohio; and no marijuana was found on his person. However, none of these assertions materially impact the findings for his Rule 1 violations. The first violation was based upon his fleeing the scene after Agent Gribbons witnessed relator driving erratically and pulled him over. The second violation was based upon the agent's observing a packet leaving relator's vehicle window and the contents of the packet subsequently testing positive for fentanyl. The testimony and allegations in the violation report concerning marijuana were immaterial to these violations of the conditions of his release.

{¶ 32} Relator next argues that Agent Gribbons's report listed failure to yield, but he was never charged with such. Whether he was actually charged with any offense related to this incident is not apparent from the record, but even if he was not, such was immaterial to the first violation for Rule 1. The first Rule 1 violation was for failing to comply with a lawful order of border patrol agent when relator fled the scene after the border patrol agent

witnessed relator driving his vehicle erratically. Agent Gribbons testified that he witnessed relator change lanes erratically and, subsequently, stopped relator's vehicle. He approached the passenger side of the vehicle and engaged in a conversation with relator and then returned to his patrol vehicle to conduct background checks on relator. Agent Gribbons testified that relator's criminal history check revealed several incidents involving narcotics. Agent Gribbons testified that he returned to the passenger side of the vehicle, asked relator if there was anything illegal in the car in the vehicle (to which relator replied, no), and asked if he could look inside the vehicle to make sure (to which relator replied, yes). When Agent Gribbons walked around to the driver's side of the vehicle, relator drove away at a high rate of speed. This evidence was sufficient to find relator guilty of the first violation of Rule 1.

{¶ 33} Relator next argues that Agent Gribbons's report indicated he had a criminal history that included guns and drugs, which he claims was false. It is true that Agent Gribbons's December 7, 2023, report indicated that when he went back to his vehicle to perform a background check on relator, the check revealed a criminal history involving guns and narcotics. Again, whether this was true was irrelevant to the violations stated in the notice of violation hearing, and the hearing officer made no mention of this in the summary of evidence used in arriving at findings. The transcript of the hearing also reveals that Agent Gribbons never testified regarding a criminal history of guns but only drugs. The parole officer's violation report does indicate several juvenile adjudications involving drugs. Regardless, even if relator's criminal history did not involve guns, that Agent Gribbons's December 7, 2023, report stated such was not prejudicial and was irrelevant to the violation of the supervision conditions he was found guilty of violating.

{¶ 34} Relator next argues that juvenile delinquencies are not considered "criminal" history. This argument seems to relate to the parole officer's violation report, which listed under the criminal history section 15 offenses that were adjudicated by the Lucas County Juvenile Court, including assault, probation violation, trafficking in drugs, escape, safe school ordinance, possession of drugs, receiving stolen property, disorderly conduct, loitering, and theft. Although adjudications in a juvenile court are not considered criminal "convictions," *see State v. Hand*, 2016-Ohio-5504, ¶ 38 (a juvenile delinquency adjudication is not a criminal conviction), relator cites no authority for the proposition that juvenile offenses and adjudications cannot be included in the "criminal history" portion of

a probation officer's parole-violation report. It should also be noted that the report specifies clearly that the offenses were committed as a juvenile and adjudicated in a Lucas County Juvenile Court. Notwithstanding, the hearing officer made no mention of his juvenile history in the summary of evidence used in arriving at findings. Therefore, this argument is without merit.

{¶ 35} Relator next argues that the drugs discovered in the packet on the side of the road did not belong to him and did not contain his DNA. There was a preponderance of substantial evidence presented at the hearing to support a finding that the packet of fentanyl was thrown from relator's car while relator was the sole occupant of the vehicle while fleeing the border patrol agent. Agent Gribbons testified that he first noticed a backpack on the floor of the vehicle and was zipped. After relator fled the scene, he believed he saw something come out of the passenger window that landed in a grassy area on the side of the road. After relator pulled over his vehicle after the pursuit, Agent Gribbons observed that the black bag that was previously on the floor of the vehicle was now on the passenger seat and was unzipped. Agent Gribbons stated that he never lost sight of relator's vehicle during the pursuit and was directly behind the vehicle when the object was thrown from the window. An officer subsequently discovered a packet in a grassy area near the location where Agent Gribbons saw the object come out of relator's vehicle. The packet was determined to contain fentanyl. Therefore, the magistrate finds that there was substantial evidence to prove by a preponderance of the evidence that relator threw the packet of fentanyl from his vehicle.

{¶ 36} Relator next argues that he did not flee the original traffic stop. Instead, relator contends that after the border patrol agent asked him some questions about his criminal history, he denied the agent's request to search the car, and the agent stated he was not under arrest or being detained. Relator claims that the agent walked away, so relator drove away. Relator's rendition of the facts differ from Agent Gribbons's testimony, and it was within the province of the hearing officer to determine credibility. The hearing officer believed Agent Gribbons's testimony that relator fled in his vehicle at a high rate of speed as Agent Gribbons walked behind the vehicle after relator gave him permission to look inside the vehicle. Therefore, there was substantial evidence to support a finding that relator failed to comply with a lawful order of border patrol agent by fleeing the scene, a

violation of Rule 1 of his conditions of supervision. The magistrate will not disturb this credibility finding.

{¶ 37} Relator next argues that his parole officer stated he became aware of the communication with inmate Phillips the day after the incident with the border patrol agent via a December 8, 2023, email from investigator Wine, but investigator Wine did not remember the date he informed relator's parole officer of the violation. Relator claims, in fact, his parole officer knew of this alleged violation two months prior to December 8, 2023, pointing out that an email exchange between investigator starts with the word "awesome," which relator claims suggests there were prior messages that were not disclosed. Relator does not clearly explain the underlying legal basis for this argument, but from relator's comments at the hearing, it seems to refer to ODRC Policy 105-PBD-09(VI), which provides that when addressing violation behavior that requires a violation hearing, the OAPA must initiate an arrest within 10 business days of knowledge of the alleged violation behavior. However, despite relator's protests at the hearing and extensive discussions on this issue between the hearing officer, the parole officer, and investigator Wine, there is no evidence in the record before the magistrate that would support relator's allegations that his parole officer was aware of the Rule 5 violations other than the date he specified in his violation report, December 8, 2023. Investigator Wine's testimony at the hearing confirmed that he sent the email to the parole officer on December 8, 2023. Therefore, this argument is without merit.

{¶ 38} Finally, relator argues that even though in the conditions of his supervision relator agreed to any warrantless search of his person, motor vehicle, residence, or personal property by his parole officer and ODRC at any time, his parole officer violated his Fourth Amendment rights when he took relator's phone from the county jail officer because this constituted a seizure and search and not a search and seizure. According to the violation report authored by relator's parole officer, the parole officer was informed on December 14, 2023, that relator's cell phone was in the custody of Toledo Police, and it would release the phone for OAPA to investigate. Relator's parole officer subsequently obtained the cell phone from Toledo Police. The cell phone was then sent to the Digital Forensics Unit to be investigated.

{¶ 39} The magistrate finds relator's argument without merit. One of the rules relator agreed upon as a condition of his parole was that his parole officer could conduct any warrantless search of his personal property at any time. Relator's parole officer obtained his cell phone after it was lawfully seized by law enforcement pursuant to his arrest. Relator's parole officer then sent it for digital forensic analysis. The search of the cell phone by a digital forensics agency was conducted pursuant to authority granted to it by relator's parole officer. Regardless, evidence obtained through an unreasonable or unlawful search and seizure is generally admissible in parole revocation proceedings. *See State ex rel. Wright v. Ohio Adult Parole Auth.*, 75 Ohio St.3d 82 (1996), paragraph two of the syllabus. The magistrate can see no violation of relator's Fourth Amendment search and seizure rights under these circumstances.

{¶ 40} For all of the above reasons, relator has failed to show the OAPA had the clear legal duty to find he did not violate the conditions of his supervision or that the OAPA abused its discretion when it found he had violated the conditions of his supervision. The OAPA's conclusion that relator violated the terms of his parole was supported by substantial evidence.

{¶ 41} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.