[Cite as *State ex rel. Woodard v. Anderson*, 2026-Ohio-1664.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keimarkus Woodard, | : | |
| Relator, | : | |
| | : | No. 25AP-792 |
| v. | : | (REGULAR CALENDAR) |
| Michael Anderson, | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on May 7, 2026

**On brief:** *Keimarkus Woodard*, pro se.

**On brief:** *Dave Yost*, Attorney General, and *Andrew Gatti*, for respondent.

IN MANDAMUS
ON MOTIONS

JAMISON, J.

{¶ 1} Relator, Keimarkus Woodard, seeks a writ of mandamus ordering respondent, Michael Anderson, chief parole board hearing officer for the Ohio Adult Parole Authority, to hold a new parole revocation hearing and find him not guilty of any parole violations. The magistrate recommended denying relator's request for a writ of mandamus.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate recommended that we deny the request for a writ of mandamus as the issues relator attempts to litigate involve the credibility of the witnesses and evidence presented during his revocation proceeding.

{¶ 3} The magistrate's decision informed the parties of their right to file objections to his recommendation under Civ.R. 53(D)(3)(b). Relator filed no objection to the magistrate's decision but filed two motions for reconsideration. But because the issues have been fully litigated at the parole board hearing, " '[u]nder the doctrine of res judicata, a final judgment of conviction precludes a defendant from raising and litigating any defense or claimed lack of due process that he could have raised on direct appeal from a judgment.' " *State v. Davis*, 2019-Ohio-4956, ¶ 9 (10th Dist.), quoting *State v. Smith*, 2013-Ohio-4674, ¶ 8 (10th Dist.), citing *State v. Szefcyk*, 1996-Ohio-337, syllabus. Although the parole board hearing is not a trial, a judgment was entered finding that there was evidence presented that the board found by a preponderance of the evidence, taking the record as a whole, that the relator violated a condition of release or a post-release control sanction. Therefore, relator cannot relitigate this issue on a motion for reconsideration.

{¶ 4} Procedurally, "[i]f no timely objections are filed, the court may adopt a magistrate's decision, unless it determines that there is an error of law or other defect evident on the face of the magistrate's decision." Civ.R. 53(D)(4)(c). Our review of the magistrate's decision reveals no error of law or other evident defect. *See*, *e.g.*, *State ex rel. Alleyne v. Indus. Comm.*, 2004-Ohio-4223 (10th Dist.) (adopting the magistrate's decision where no objections were filed). As the magistrate notes, dismissal of an action for failing to comply with the procedural requirements of R.C. 2969.25 is a dismissal without prejudice.

{¶ 5} Finding no error of law or other defect on the face of the magistrate's decision, we adopt it in its entirety, including findings of fact and conclusions of law, find his motions for reconsideration moot, and deny relator's request for a writ of mandamus and dismiss this action.

*Writ of mandamus denied*;
*motions for reconsideration moot*;
*action dismissed*.

BOGGS, P.J., and LELAND, J., concur.

_____

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keimarkus Woodard, | : | |
| Relator, | : | |
| v. | : | No. 25AP-792 |
| Michael Anderson, | : | (REGULAR CALENDAR) |
| Respondent. | : | |

### M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 10, 2026

*Keimarkus Woodard*, pro se.

*Dave Yost*, Attorney General, and *Andrew Gatti*, for respondent.

IN MANDAMUS

{¶ 6}  Relator, Keimarkus Woodard, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Michael Anderson, who is the chief parole board hearing officer for the Ohio Adult Parole Authority ("OAPA"), to hold another parole hearing and find him not guilty of any parole violations.

Findings of Fact:

{¶ 7}  1. Relator was formerly an incarcerated individual.

{¶ 8}  2. Respondent Anderson is the chief parole board hearing officer for the OAPA.

{¶ 9}  3. Relator was released from incarceration and placed on post-release control on March 7, 2023. By the terms of his conditions of supervision, relator was required to abide by the following terms, in pertinent part: (1) RULE 1 – claimant must obey federal, state, and local laws and ordinances and have no contact with the victim of any of his current offenses or any person who has an active protection order against him; and RULE 2 – claimant must follow all orders given to him by his supervising officer or other authorized representatives of the court of department of rehabilitation and correction, including obtaining permission from his supervising officer before changing his residence and submitting to drug testing.

{¶ 10}  4. On March 28, 2025, relator's vehicle was stopped by Toledo police for window tint. A police report from the traffic stop, dated March 28, 2025, indicates the following: (1) Detective James Macklin initiated a traffic stop on relator's vehicle based upon excessive window tint; (2) relator indicated there were no drugs or weapons in the vehicle; (3) a K-9 dog gave a positive indication on the vehicle; (4) a search revealed baggies of multi-colored pills, multiple suboxone strips, a scale, and mail belonging to relator inside of a backpack behind the driver seat; and (5) relator was cited, released at the scene, and told a warrant would be issued at a later time for the narcotics. The police report indicated that relator was cited for trafficking, aggravated trafficking in drugs-trafficking certain Schedule I or II drug; and possession of controlled substant-schedule I or II substance. The disposition indicated "pending."

{¶ 11}  5. In a March 30, 2025, text message to his OAPA officer (a.k.a., parole officer), Jon Dubois, relator said he wanted him to know about a police contact that resulted in a ticket for window tint on his car. He also said that police told him that he would receive something in the mail if the pills found in the car came back for anything, but he was not charged with anything yet.

{¶ 12}  6. A Toledo Police Forensic Laboratory Report signed by the analyst on April 24, 2025, and technically reviewed on May 15, 2025, indicated that the seized pills contained methamphetamine, acetaminophen, and caffeine.

{¶ 13}  7. On May 19, 2025, the OAPA notified relator of an alleged violation of the conditions of supervision. The May 19, 2025, notification of release hearing alleged two violations of Rule 1 regarding relator's preparation for shipment or distribution of a

controlled substance and possession of methamphetamine. The notification also alleged a violation of Rule 2 regarding his failure to report to the government center, as directed by Dubois, as detailed in the June 4, 2025, violation report.

{¶ 14} 8. In a violation report signed by Dubois June 4, 2025, Dubois stated the following: (1) after he received the March 30, 2025, text message from relator regarding his police contact, he confirmed the window-tint charge via Toledo Municipal Court inquiry on March 31 and April 2, 2025 but he saw no other charges; (2) he found no police report accompanying the stop via a LEADS inquiry; (3) relator told Dubois that he did not recall what the seized pills were; (4) Dubois told relator that he would monitor the docket/LEADS system for any further information about the stop and address any new evidence accordingly; (5) on April 24, 2025, Dubois discovered the March 28, 2025, police report, detailed above, that related to the discovered pills while completing a LEADS inquiry regarding another unrelated police contact with relator; (6) after Dubois discovered the police report regarding the methamphetamine pills, he text messaged relator on April 25, 2025, to report to the government center after his work day, but relator failed to report; (7) relator was taken into custody on May 7, 2025; and (8) on May 15, 2025, Toledo police contacted Dubois and advised him that the pills seized from the March 28, 2025, stop were a mixture of caffeine and methamphetamine.

{¶ 15} The report alleged two violations of Rule 1 regarding relator's preparation for shipment or distribution of a controlled substance and possession of methamphetamine.

{¶ 16} The report also alleged a violation of Rule 2 regarding his failure to report to the government center, as directed by Dubois.

{¶ 17} 9. On June 17, 2025, a post-release-control-revocation hearing was held. OAPA officer Dubois and Detective Macklin testified, although the record before the court does not contain a transcript of the hearing.

{¶ 18} 10. On June 17, 2025, the parole board hearing officer issued a notice of findings of release-violation hearing, finding relator guilty of violating Rule 1 (two violations) and Rule 2 (one violation) of his conditions of supervision. The hearing officer found the following, in pertinent part: (1) relator was arrested on May 7, 2025 and was served with notice of violations on May 19, 2025 (8 business days) for a hearing scheduled for June 12, 2025 (25 business days); thus, all administrative timeframes were met in this

case; (2) relator objected to the rule violations based upon timeframe issues, but it was deemed that the OAPA was within the administrative timeframes due to the date of knowledge that the alleged violation was, in fact, a criminal violation; (3) relator chose to leave the hearing, and it was held without his presence; (4) Dubois testified that he received a text from relator on March 30, 2025, that he was pulled over for a tint violation and police had found some pills; relator would not tell Dubois what the pills were; and Dubois staffed the information, and it was decided not to arrest relator because they had no information if there was actual violation behavior; (5) upon locating the police report weeks later, Dubois confirmed there was a violation, and he contacted relator and ordered him to report on April 25, 2025, which relator failed to do; (6) relator reported on May 7, 2025, and was arrested; (7) Detective Macklin testified that relator was pulled over due to excessive tint; upon pulling over relator, a K-9 was used to inspect the vehicle, and the K-9 provided a positive indication; the vehicle was searched and a book bag with baggies of pills were located along with mail belonging to relator; the pills were sent to the lab; and the results showed the pills contained methamphetamine; (8) the OAPA submitted text messages, lab results, conditions of supervision, and a police report as evidence; and (9) the evidence and testimony provide substantial evidence to prove that relator violated Rule 1 (two violations) and Rule 2 (one violation) beyond the preponderance-of-evidence standard. Relator had a sanction of 183 days of incarceration imposed, with December 17, 2025, being the date of completion of the term.

{¶ 19} 11. On October 3, 2025, relator filed his petition for writ of mandamus.

Conclusions of Law:

{¶ 20} The magistrate recommends that this court deny relator's petition for a writ of mandamus.

{¶ 21} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A relator bears the burden of persuasion to show entitlement to a writ of mandamus by clear and convincing evidence. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 26. "Clear and

convincing evidence" is a measure or degree of proof that is more than a preponderance of evidence, but it does not extend the degree of certainty beyond a reasonable doubt as required in a criminal case; clear and convincing evidence produces in the trier of fact's mind a firm belief of the fact sought to be established. *State ex rel. Miller v. Ohio State Hwy. Patrol*, 2013-Ohio-3720, ¶ 14.

{¶ 22} The Rules of Evidence do not apply to probation-revocation hearings. *State v. Kaimachiande*, 2019-Ohio-1939, ¶ 20 (3d Dist.), citing *State v. Newsome*, 2017-Ohio-7488, ¶ 21 (4th Dist.) and Evid.R. 101(C)(3); *State v. Simpkins*, 2006-Ohio-3496, ¶ 13, fn. 3 (8th Dist.). The rationale behind this exception is, given the informality of this type of proceeding, the trier of fact should be able to consider any reliable and relevant evidence to determine whether the probationer has violated the conditions of his probation. *Columbus v. Bickel*, 77 Ohio App.3d 26, 36-37 (10th Dist.1991.). Thus, hearsay evidence can be permissible in a community-control-revocation hearing, even if it would have been inadmissible in a criminal trial. *See State ex rel. Mango v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1559, ¶ 14 (finding parole board may admit hearsay evidence because a parolee contesting revocation does not have the same confrontational rights as does a trial defendant; accordingly, the arresting officer's testimony at the revocation hearing may be considered, even if it contained hearsay statements); *State ex rel. Coulverson v. Ohio Adult Parole Auth.*, 62 Ohio St.3d 12, 16 (1991) (finding the parole board may admit hearsay); *Kaimachiande* at ¶ 20 citing *State v. Ohly*, 2006-Ohio-2353, ¶ 21 (6th Dist.).; *State v. Dagley*, 2022-Ohio-2671 (8th Dist.) (no due process when parole authority considers unsworn statements of the probation officer at the hearing, and such does not render the sentence contrary to law).

{¶ 23} The United States Supreme Court has suggested that due process requires sufficient evidence to support the revocation of parole, probation, or other types of postrelease supervision. *Mango* at ¶ 18, citing *Black v. Romano*, 471 U.S. 606, 615-16 (1985) (finding that the state trial court's decision to revoke an offender's probation satisfied due process, agreeing that there was sufficient evidence to support that the defendant had violated the conditions of his probation). There is sufficient evidence to sustain a revocation of parole when there is "substantial evidence" to support the decision. *Id.*, citing *State v. Delaney*, 11 Ohio St.3d 231, 236 (1984). There is "substantial evidence"

to support a finding of a parole violation when the evidence presented by the parole authority, if believed, is sufficient to satisfy the burden of proof. *Id*, citing *Consol. Edison Co. of New York v. Natl. Labor Relations Bd.*, 305 U.S. 197 (1938) (finding that substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion); and *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992) (finding substantial evidence is evidence with some weight; it must have importance and value). The purpose of a parole-revocation hearing " 'is to determine whether there is a preponderance of the evidence, taking the record as a whole, that the releasee violated a condition of release or post-release control sanction.' " *Mango* at ¶ 19, quoting Adm.Code 5120:1-1-18(A)(3).

{¶ 24} Furthermore, a court hearing a matter in mandamus may not reweigh the credibility of the witnesses. *State ex rel. Jackson v. Wilkinson*, 10th Dist. No. 94APD12-1789 (June 20, 1995) (rejecting relator's claim that his parole officer perjured herself and that the OAPA believed her perjury, given the court is unable to reweigh the credibility of the respective witnesses at a revocation hearing); *State v. Motz*, 2020-Ohio-4356, ¶ 31 (12th Dist.) (noting that a trial court determines the credibility of the witnesses at a revocation proceeding).

{¶ 25} In the present case, although sometimes difficult to clearly discern, relator raises the following arguments: (1) the hearing official relied on insufficient evidence to find him guilty of the violations and never allowed him to present witnesses; (2) Dubois indicated that he was unable to locate any records relating to the drug charges after relator texted him about the traffic stop; yet, the police report is dated March 28, 2025, and signed by a supervisor on the same date; (3) the hearing officer accepted Dubois's explanation that the police report for the drug offenses was delayed due to the pending lab tests, but Dubois's explanation that the report was visible on April 24, 2025, due to the lab results being released is disputed; (4) Dubois knew of the police report regarding the drug offenses on March 28, 2025, but he withheld that evidence for the purpose of bypassing ODRC policy 105-PBD-09, which only allows a parole officer 10 days to investigate and issue a violation; and (5) Dubois stated in his report that on May 15, 2025, Toledo police contacted him and advised him that the pills were a mixture of caffeine and methamphetamine; yet, he claimed the police report regarding the drug offenses became visible on April 24, 2025.

{¶ 26} The gist of relator's arguments is that Dubois's testimony was not credible. As explained above, credibility is a determination for the hearing officer. After reviewing the evidence available in the record, the magistrate sees no reason to question the hearing officer's credibility determination regarding Dubois. Relator's arguments concern the date that Dubois became aware of details supporting a violation of his conditions of supervision. Although the magistrate agrees that the final police report relating to the drug offenses was dated March 28, 2025, and Dubois did not text relator to report to the government center concerning the violations until April 25, 2025, Dubois explained that the delay was due to the report not appearing in LEADS until after lab tests were completed, and he did not discover the report until April 24, 2025, while investigating another unrelated contact between relator and police. There is nothing in the record that clearly refutes Dubois's explanation.

{¶ 27} On April 24, 2025, Dubois discovered the March 28, 2025, police report that related to the seized pills while completing a LEADS inquiry regarding another unrelated police contact with relator. Dubois indicated that he checked the Toledo Municipal Court docket on March 31 and April 2, 2024, but he only was able to find the window-tint charges, and his LEADS inquiry during the same period did not reveal any charges related to the seized pills. Relator admitted in his March 30, 2025, text message to Dubois that police told him they would contact him if the pills came back for anything, and he was not charged with any drug offenses yet; thus, relator was aware the pills were going to be tested sometime in the future, and any charges would be delayed. Detective Macklin also testified that the pills were sent to the lab after they were found in relator's car. Therefore, there is no dispute that the pills needed to be first identified via lab tests before relator could be charged. The hearing officer's conclusion that the OAPA was within the required timeframes based upon the date Dubois discovered that the alleged violation was, in fact, a criminal violation was reasonable based upon the evidence and testimony presented at the hearing. There is no evidence in the record that Dubois knew of the police report regarding the drug offenses prior to April 24, 2025, and withheld that evidence for the purpose of bypassing ODRC policy timeframes for bringing charges, as relator alleges. The Toledo Police Forensic Laboratory Report was signed April 24, 2025, which lends support to Dubois's claim that he first discovered the drug charges in LEADS on that date. Why Toledo

police waited to contact Dubois about the lab results until May 15, 2025, is not clear; however, the Toledo Police Forensic Laboratory Report signed on April 24, 2025, was not "technically reviewed" until May 15, 2025, which may account for the delay. Nevertheless, based upon the evidence in the record, the magistrate finds that there was substantial evidence to prove by a preponderance of the evidence that relator was guilty of two violations of Rule 1 and one violation of Rule 2 in his conditions of supervision.

**{¶ 28}** For all of the above reasons, relator has failed to show that respondent had the clear legal duty to find he did not violate the conditions of his supervision or that the hearing officer abused his discretion when he found relator had violated the conditions of his supervision.

**{¶ 29}** Accordingly, it is the magistrate's recommendation that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.